*Richmond.*

WELCH AND AL. V. McDONALD.

November 22d, 1888.

1. CONTRACTS—*Breach — Stipulated damages — Pleading — Instructions—Verdict.*—Contracting parties may state a definite sum as the damages to be paid to the injured party in case of breach of contract. Where defendants agreed to pay as such damages "five dollars per day for each day after 22d day of June that this contract remains unfulfilled,"

HELD:
> Plaintiffs have no right of action for any damages resulting from delay other than the stipulated five dollars per day; and a count, an instruction, or a verdict based upon any other theory, is illegal and erroneous.

2. IDEM—*Construction—Breach—Case at bar.*—W. agreed to furnish building stone for M. according to specifications, and to pay five dollars per day for delay beyond a stated time, unless caused by circumstances beyond his control;

HELD:
> M. can recover nothing for delay caused by his failure to furnish W. with the specifications or by bad weather.

Argued at Wytheville, decided at Richmond. Error to judgment of hustings court of Roanoke city, rendered June 25th, 1887, in an action of trespass on the case for the alleged breach of a contract, wherein H. P. McDonald, Kenneth McDonald and Donald McDonald, partners in the style of McDonald Brothers, were plaintiffs, and William Welch and B. B. Dull were defendants. There was a demurrer to the declaration and to each count thereof, which was overruled. The verdict was for the plaintiff for $1,907.38, and the defendants moved the court to set it aside and to award them a new trial, which motion was

also overruled. The defendants excepted to this ruling. The evidence was certified, and they brought the case here on writ of error and *supersedeas.* Opinion states the case.

*Griffin & Watts,* and *S. M. Brophy,* for the plaintiff in error.

*Penn & Cocke,* for the defendant in error.

FAUNTLEROY, J., delivered the opinion of the court.

From the record it appears that the defendants in error, McDonald Brothers, were contractors and builders by calling, making a specialty of building jails in various States; and in December, 1885, they contracted with the city of Roanoke, in Virginia, to build a jail and jailor's house, to be completed by the first of October, 1886, in accordance with *plans and specifications.* On the 21st of April, 1886, McDonald Brothers made a sub-contract with William Welch and B. B. Dull to furnish all the stone necessary to build the walls of the Roanoke jail, *in accordance with the plans and specifications,* stones to be cut to dimensions ready for setting, marked for their places, and delivered in the jail lot, for the consideration of $8.50 per cubic yard, on or before the 22d day of June, 1886; and they, Welch and Dull, agreed to pay to the first parties, McDonald Brothers, "*five dollars per day* for each day after the 22d day of June, 1886, that this contract remains unfulfilled, unless the delay is occasioned by circumstances over which the parties, Welch and Dull, could have no control."

Welch and Dull took immediate and active steps to fulfill their said contract, opening a quarry and making every requisite preparation for prosecuting the work; but a period of unusually rainy weather for several weeks made it almost impossible to get out the stone, and after this ceased they were hindered and retarded by the want of the *plans* and *specifications,* without which it was impossible for them to know and to prepare the

sizes and kinds of stones required to be marked and furnished, and which *plans* and *specifications* were repeatedly refused and denied to them by McDonald Brothers because Welch was a rival contractor; they arbitrarily substituting therefor a diagram "as near as possible plans and specifications," which they gave specially to *Dull,* who kept them in his pocket; and for the necessary information had to apply frequently to McDonald Brothers, who were often absent, and Dull sick. From the hindrance of the weather—but chiefly because of the want of plans and specifications essential to the performance of their contract to furnish stone *cut* and *marked,* in accordance with the plans and specifications, ready for setting—the plaintiffs in error, Welch and Dull, were unable to fulfill their contract by the 22d of June, 1886; whereupon McDonald Brothers took the work out of the hands of Welch and Dull, and assumed to do the work themselves, getting out the residue of the stone required with their own force and under their own supervision, they having other extensive works of their own going on at the same time, with many workmen under their foreman, who reported pay-roll, expenses, supplies, etc. The jail and jailor's house were completed by them and turned over to the city of Roanoke on November 10th, 1886, when it was accepted by the said city; and no forfeit or damage for the forty days' delay beyond the stipulated 1st day of October, 1886, was demanded or exacted from McDonald Brothers.

On the first day of October, 1886, McDonald Brothers instituted this suit of trespass on the case in the hustings court of Roanoke City against Welch and Dull for alleged breach of their contract, and filed their bill of particulars as follows, viz:

For money expended in completing their contract, - $2,533 87  
Damages on the contract at five dollars per day from  
    June 22d, 1886, till the institution of suit, -    -     500 00  
Services 3½ months superintending the completion  
    of the contract, -    -    -    -    -    -    -     525 00

| | | |
|---|---|---|
| Liability to the city of Roanoke for delay, - - | $ | 200 00 |
| Damages for hindrance to McDonald Brothers' performing other contracts in other places, - - | | 1,000 00 |
| Aggregating, - - - - - - - - | | $4,758 87 |

which enormous sum they demanded Welch and Dull should pay to them for their failure to perform fully a contract, for the full completion of which they were to receive only $750. The plaintiffs filed their declaration containing three counts; and the defendants demurred to the declaration, and specially to each count; which demurrer the court overruled, and the defendants excepted. Upon the trial, after the evidence had been given to the jury, the plaintiff asked for instructions, which were given by the court against the objection of the defendants; and the defendants asked for instructions, two of which were given, but the third instruction was refused by the court, as follows, viz: "The court instructs the jury that the burden of proving their account of damages in this case is upon the plaintiffs, and that in arriving at a verdict, it is not competent or proper for them to consider any statements of the plaintiffs as to charges based upon reports made by his foreman, or other agent, not in the presence of the defendants or either of them." To the action of the court in giving the instructions asked for by the plaintiffs, and in refusing to give the said instruction number three, asked for by the defendants, the defendants excepted. The jury found a verdict for the plaintiffs, and assessed their damages at $1,907.38 with interest from the 25th day of June, 1887, till paid, and the costs.

The defendants offered affidavits of newly discovered evidence, and moved the court to set aside the verdict and grant a new trial, on the grounds that the verdict is contrary to the law and the evidence; the damages excessive; and the after-discovered evidence; which motion the court overruled, and gave judgment for the plaintiffs upon the verdict.

In their petition for writ of error, which was awarded by one of the judges of this court, the plaintiffs in error assign as error in the court below: the overruling of the demurrer to the declaration and to each count thereof; the giving instructions as asked for by the plaintiffs; the refusing to set aside the verdict, and to grant a new trial, for the reasons (set forth in the second bill of exceptions) that the verdict is contrary to the law and the evidence, and the newly discovered evidence.

The suit is an action of trespass on the case for breach of contract. The declaration avers the contract, without stating the express provision in it of payment by the defendants of five dollars per day for every day's delay in fulfilling the contract after the 22d day of June, 1886; and claims consequential damages.

The defendants did not crave oyer of the contract, but demurred to the declaration and to each count thereof. The first and second counts are right, in the case set out. The radical difference between the contract declared on, and the one really made and put in evidence, did not *then* appear; and the demurrer was properly overruled as to these counts. Had oyer of the contract been craved, and the true contract made known to the court, the demurrer to these counts ought to have been, and, doubtless, would have been sustained. The demurrer to the third count was erroneously overruled. It claims damages for delays in contracts in other States, and with other parties wholly unconnected with the cause of action before the court.

Upon the trial, on the issues joined, the actual contract itself was first brought to view, and was put in evidence by the plaintiffs; and this contract in writing showed, on its face, that the parties had themselves ascertained and agreed to give and to accept the measure of damages to which defendants were liable in the event, thus contemplated and provided for, of their failure to fulfill the contract. They were ascertained, liquidated, and agreed damages.

Sedgwick, on the Measure of Damages, chapter VII, marginal

page 202, says: "The law permits parties, in their agreements, to fix their own terms, conditions and prices, and the court did not err in holding the amount estimated by themselves, with interest thereon, to be the rule of damages." On page 203 Sedgwick says: "It has been repeatedly said that courts will not attempt to modify the contracts of the parties; their only duty is to expound and enforce them." In chapter XIV, marginal page 397, of Sedgwick on the Measure of Damages, it is laid down as follows: "We now approach another class of cases, where the parties have agreed on a sum certain as the measure of damages. It is competent to parties entering on an agreement to avoid all future questions of damage which may result from a violation of the contract, and to agree upon a definite sum as that which shall be paid to the party who alleges and establishes the violation of the agreement. In this case the damages so fixed are termed *liquidated, stipulated,* or *stated* damages."

This is not only law, but is common sense and justice. In the contract put in evidence by the plaintiffs, and relied on as the foundation of their demand, it is expressly stipulated that the defendants, Welch and Dull, "agree to pay to the first parties $5 per day for each day after the 22d day of June that this contract remains unfulfilled, unless, etc." This payment of $5 per day for one hundred days—$500—is one item of the bill of particulars filed by the plaintiffs, McDonald Brothers. This contract is fully within the principle laid down by Sedgwick. The parties themselves fixed the measure of damages; and on their own evidence the plaintiffs were shown to have no right of action for anything beyond $5 per day for each and every day which they might establish as the duration of an unjustifiable delay in the fulfillment of the contract, after the 22d of June, 1886.

There were but three questions for the jury, properly, to consider: First. Had there been a default on the part of the defendants? Second. How long had that default, if any, continued after the 22d day of June, 1886, and was it caused by circum-

stances over which the defendants had no control?   Third.  To
what amount were the defendants entitled to credit under their
bill of offsets?   The jury was, by the contract, confined to the
limits of these inquiries; and they ought not to have been per-
mitted and instructed to go outside of and beyond them.   The
court erred in giving the plaintiffs' instruction, number one,
which permitted the jury to go beyond the limit fixed by the
contracting parties as the measure and rule of damages.   The
court erred in refusing the third instruction asked for by the
defendants, and in admitting in evidence the statements of plain-
tiffs as to charges based on reports made by their foreman or
agent.   It erred in admitting any evidence as to damages be-
yond the actual number of days in which the contract remained
unfulfilled after the 22d day of June, 1886.   It erred in not
instructing the jury that they could not consider any question
of damages beyond the measure fixed by the contract, nor for
any amount greater than $5 per day during such delay.

The evidence in the record does not show that any part of this
forfeiture of $5 per day was really and justly incurred by the
defendants.   The declaration avers that they were to build a
jail and jailor's house "according to plans and specifications;"
and the contract with Welch and Dull is, that they were to fur-
nish all the stone for the walls, in *accordance with the plans and
specifications*—cut, ready for setting, and marked for their places.
If they did not do all three of these requirements, the stone
would not have been accepted, and their labor would have been
lost.   Each particular stone was to be cut ready to be set in a
particular place, and that place was to be marked on it, so that
the masons could pick it up and set it without searching, or try-
ing several stones, or extra hauling.   How could Welch and Dull
do this without copies of the plans and specifications furnished
by the city of Roanoke to the plaintiffs?   It was a most material
part of the obligation of the contract on the plaintiffs that they
should furnish this essential information and guide without
delay.   They aver in their declaration that they have kept and

performed all their promises and undertakings in the contract. Have they done so, in the essential particular of the prescribed *plans* and *specifications?* It was their place to show, beyond doubt, that they had; and the proof is that they *had not.* The plaintiff and witness, D. McDonald himself, says that they did not; and he refused to give the defendants, Welch and Dull, the *plans* and *specifications,* because Welch was a rival contractor; but furnished Dull with a paper marked so as to make it, as far as possible, plans and specifications. It is in proof that Dull, even with this paper in his pocket, had constantly to apply for information to D. McDonald, and that he was often absent for considerable periods. Dull had worked for McDonald before; and with his old experience and such information as he could get from McDonald, Welch and Dull worked along and did get out sixteen cubic yards of the eighty-six or ninety cubic yards which they were to furnish; but even these they could not mark for want of the plan; and when Dull was sick and McDonald absent, as the record shows was the case for considerable periods, they could do nothing for lack of the necessary information.

Thus hindered and embarrassed in the prosecution of their work, both by the extreme and unusual rainy weather, and by the dereliction of the plaintiffs to furnish them with the plans and specifications, Welch and Dull were unable to fulfill their contract by the stipulated 22d day of June, 1886; but it is clear from the evidence that the plaintiffs failed in their part of the contract, by neglecting to give, or wilfully refusing and withholding the plans and specifications, which were indispensable to the performance of the contract by the defendants; and on the 22d day of June, McDonald Brothers arbitrarily took the work out of their hands, and virtually rescinded the contract and released the defendants. This brings the defendants, Welch and Dull, within the proviso in the contract, "unless the delay is occasioned by circumstances over which the said parties (Welch and Dull) have no control." The defendants were satis-

fied with their contract and expected to make a profit out of it; and, no doubt, they could and would have done so had they been allowed to proceed, with the proper information which the plaintiffs were bound to furnish. The whole case bears the marks of a purpose on the part of the plaintiffs to drive the defendants into a failure, and then to extort from them a most unconscionable claim for consequential damages, in addition to the damages fixed in the contract. The verdict is, on its face, excessive, in giving $1,907.38 damages for failure in a contract not exceeding, in all, $750, one-fifth of which had been performed. The plaintiffs' testimony shows that sixteen cubic yards, at $8.50, had been delivered, amounting to,      - $136 00

And three sets had been delivered,   -    -    -    -    6 00

$142 00

And defendants had been paid only  -    -    -    - $70 00

Leaving -    -    -    -    -    -    -    - $72 00

due the defendants; for which, under their plea and bill of off-sets and the proofs in the cause, there ought to have been a verdict in their favor, with costs.

The verdict of the jury is plainly contrary to the law and the evidence, and must be set aside; and the judgment of the hustings court, complained of, is wholly erroneous, and must be reversed and annulled. And this court will proceed to render such judgment as the said hustings court ought to have rendered.

JUDGMENT REVERSED.