# CHARLESTON.

MITCHELL *et al.* v. DAVIS *et al.*

Submitted December 2, 1913.  Decided December 9, 1913.

1.  JUSTICES OF THE PEACE—*Jurisdiction—Amount Involved.*

In a civil action before a justice the amount named in the sum-
mons determines jurisdiction.  If plaintiff's claim exceeds three
hundred dollars, he may release all above that sum and sue for the
remainder, but he can not divide his claim and bring separate suits.
(p. 353).

2.  CONTRACTS—*Breach—Action by Contractor—Recoupment.*

If a contractor has been prevented by the contractee from per-
forming his contract according to its terms he is not liable in dam-
ages, notwithstanding a stipulation in the contract for liquidated
damages for failure to perform.  (p. 353).

Error to Circuit Court, Lincoln County.

Action by A. B. Mitchell and A. E. Adkins, partners, etc.,
against H. A. Davis and others.  Judgment for plaintiffs, and
defendants bring error.

*Affirmed.*

*D. E. Wilkinson,* and *Williams, Scott & Lovett,* for plain-
tiffs in error.

*Leftwich, Byrnside & Shaffer,* for defendants in error.

WILLIAMS, JUDGE:

Plaintiffs, A. B. Mitchell and A. E. Adkins, partners in
a logging contract, recovered a judgment against H. A. Davis,

W. H. Muth and L. S. Davis, partners trading as the Gem Lumber Company, for the sum of $260.34, and they were awarded this writ of error. Defendants were engaged in the manufacture and sale of lumber, and had constructed a tram-road extending from their sawmill, up a stream into some standing timber which they had purchased. They employed A. B. Mitchell and Joseph McNeeley on April 21, 1910, to cut, haul and place the timber on skids at their mill, at the price of $5.00 per thousand feet, log scale. Mitchell and McNeeley were to use the tramroad over which to haul the logs. It was also mutually agreed that, if they should fail to place on skids, at the mill, at least 8,000 feet per day, or if defendants should fail to saw that much per day, the party so failing should forfeit to the other seventy-five cents per 1,000 feet for the shortage, but that said forfeit was not to apply in case of any hinderance in the work beyond the control of the party. By consent of all parties, McNeeley retired from the contract about the last of November, 1910, and A. E. Adkins took his place. Payments were to be made on the 15th of the month following that in which the work was done.

This action was brought on 6th April, 1911, to recover the price claimed for logs delivered in December, 1910, and in January and February, 1911. Plaintiffs had delivered 139,191 feet in those months. The action was brought in a justice's court and, after judgment by the justice, appealed to the circuit court. Summons was issued for $300.00, and plain-tiffs' account filed showed a balance due them of $318.70. It is argued that this fact shows that the amount was beyond the jurisdiction of a justice. Defendants moved to dismiss the action on this ground, and the court overruled the motion. This was not error. In civil actions, the amount demanded by the summons determines the justice's jurisdiction. *Moore* v. *Harper*, 42 W. Va. 39; *Todd* v. *Gates*, 20 W. Va. 464. Plaintiffs had a right to release a part of their claim, which they did, in order to bring it within the jurisdiction of a justice. *Richmond* v. *Henderson*, 48 W. Va. 389.

Defendants sought to recoup damages on account of plain-tiffs' shortage in delivery of logs, and filed a claim of recoup-ment and offsets amounting to more than plaintiffs' demand,

but the jury found against them. The principal assignment of error urged by their counsel, both in brief and in oral argument, is that the court erred in overruling defendants' motion to set aside the verdict and grant them a new trial, on the ground that the verdict is against the evidence.

Plaintiffs stipulated in writing what they should forfeit for failing to deliver 8,000 feet of logs per day. It is virtually admitted by plaintiffs' counsel that this was intended by the parties as liquidated damages, and was not a penalty to secure performance of the contract, in which latter case defendants' recovery would be limited to a less sum than that stipulated, provided their actual damages were less. That plaintiffs failed to deliver 8,000 feet per day is admitted. There are seventy-seven work days in the three months covered by plaintiffs' claim, and if they had delivered an average of 8,000 feet per day for that number of days, the total amount would have been 616,000 feet; whereas they delivered only 139,190 feet, thus falling short 476,810 feet. That quantity, at seventy-five cents per thousand, would amount to $357.60, which is more than plaintiffs demand; and, unless plaintiffs have proven, to the satisfaction of the jury, a lawful excuse for their failure to comply with that part of their contract, the verdict should have been for defendants, and they should have been discharged. The principal question is: Does the evidence justify the jury in concluding that plaintiffs' failure was due to the acts and conduct of defendants, or their agents and employees? It is not claimed that plaintiffs were providentially hindered. But there is evidence tending to prove that a sufficient quantity of logs were cut and placed on the skids along the tramroad; that the man employed to truck them to the mill failed to deliver them; and that this trucker was employed and paid by defendants.

By the terms of the agreement plaintiffs were to use defendants' tramroad to get the logs to the mill; defendants also used it, at the same time, to haul their lumber from the mill to market. They trucked the lumber up the tramroad to a point where it was carried over the mountain by an hoisting engine to a railroad on another stream. There being but one line of tramroad, it was impracticable to have two men trucking over it in opposite directions at the same time. One trucker would

save time and expense, as it would not be necessary for him to haul an empty truck either way. Consequently it was mutually agreed, after the original contract was made, that one man should do all the trucking. Different men were employed at different times to do this, the last one being a man named Linkous. The jury could properly infer from the evidence that he was the servant of defendants. He was paid sixty cents per thousand feet for trucking logs to the mill, and a certain other price per thousand for trucking the lumber to the hoisting engine. With the exception of one time when Mitchell sent him a check, Linkous was paid by defendants and the amount paid him on plaintiffs' account, to-wit sixty cents per thousand, charged against them. Mr. Mitchell swears: "We took their man to do our trucking by agreement with them," * * * * "Mr. Davis paid him and charged us up with it." A man named Woodyard seems to have had the contract to do the trucking at one time, and he employed other men to do the work. L. S. Davis admits, in his testimony, that they had a contract with Woodyard to do the trucking, but says he did not employ Linkous. But he is here evidently testifying to a conclusion, which he has incorrectly drawn, for he admits that Linkous took over the Woodyard contract, with defendants' consent. It also appears that, before plaintiffs quit the job, defendants bought Linkous' teams and undertook to do the trucking themselves and charged plaintiffs seventy-five cents per thousand feet. The exact terms of the Woodyard contract do not appear, but that it was made between him and defendants, the jury could well believe. Defendants admit that Linkous had acquired Woodyard's rights under that contract, with their assent, and that he was operating under it. Such arrangement was carried on with the tacit consent, if not expressed agreement, of all parties, and amounted to a modification, pro tanto, of the original contract between plaintiffs and defendants. Inasmuch as defendants had employed Linkous, and were paying him for all his services, they had a right to discharge him, if his work was not satisfactory. Plaintiffs had no right to discharge him; neither was it practicable, so long as he was retained by defendants, to employ a different man to haul the logs to the mill. In view of these facts and circumstances,

73 W. Va.

the jury were justified in believing that plaintiffs were prevented from performing their contract, according to its terms, by the acts of defendants, their agents and servants. This being true, the law does not hold plaintiffs liable in damages.

"Where the performance of a contract according to its terms has been prevented by the obligee therein, he will not be permitted to recover the liquidated sum stipulated to be paid on a breach." 19 A. & E. E. L. (2nd ed.) 423. This question arose in *Dodd* v. *Churton*, 1 Q. B. Div. (1897), 562. There plaintiff agreed to complete certain building works, according to specifications and drawings, by June 1, 1892, or forfeit two pounds a week for every week the work remained unfinished after that date as liquidated damages. The contract also provided that he should make any alterations or additions, not contained in the drawings and specifications, that might be directed by the architect, and that such alterations should not vitiate the contract, but that deductions from, or additions to, the contract price should be made according to the schedule of prices in the specifications for like work. The building was not completed until December 5, 1892; and the contractor had performed additional work to the amount of more than twenty-two pounds. The contractor sued for the balance due him, and defendant sought to recoup liquidated damages for the delay at the rate of two pounds per week. The court held that the additional work, which was shown to require at least two or three weeks additional time, was a lawful excuse for not completing the work in the time specified, and exonerated the contractor from liability to pay the liquidated damages.

*Willis* v. *Webster*, 1 Hun. (N. Y.) 301, decides the same principle. There a contractor had agreed to complete certain buildings by a certain day, and if not completed by that time he was to forfeit $250.00 a day, as liquidated damages, for every day thereafter until the work was completed. He sued to recover a balance claimed to be due him, and defendants set up a counterclaim for liquidated damages, alleging that the completion of the contract had been delayed about a month. Plaintiff replied that the delay had been caused by defendants, their agents, contractors and mechanics; that defendants had given other contractors possession of portions

of the premises that were necessary for plaintiffs' use in order to complete his work. Finding that the facts replied were proven, substantially as alleged, the court held that the contractor was exonerated from the payment of damages. It furthermore held that, even though defendants' acts did not account for the entire delay, still it was not possible to apportion the liability. The court in its opinion says: "It is impossible under the contract to apportion liquidated damages. Either the liability for the liquidated damage exists or it does not. It cannot half exist and half be waived. In the case at bar there was a definite contract, which was abrogated by the acts of both parties; and it requires equally concerted action . to breathe life into it again—of evidence of which the case is entirely barren."

Such we understand to be the effect of the court's holding in the English case above cited. There was no apportionment in that case, although the delay had continued for six months and the evidence showed that the extra work, relied on to excuse delay, could have been performed in two or three weeks.

In *Welch* v. *McDonald,* 85 Va. 500, the supreme court of appeals of Virginia applied the same rule. McDonald Brothers had a contract with the City of Roanoke to build a jail and jailor's house, and subcontracted with Welch and Dull to furnish the stone for the walls of the building, the stones to be dressed and marked, so that each stone would fit into its proper place, at the price of $8.50 per cubic yard. All the stone was to be delivered by the 22nd of June, 1886, and if not Welch and Dull were to forfeit $5.00 a day for each day thereafter the contract remained unfulfilled. The contract was not completed at the time stipulated, and McDonald Brothers thereupon took the work out of the hands of their subcontractors and completed the buildings themselves. On the 1st of October, following, McDonald Brothers brought an action against Welch and Dull, claiming damages, at the rate of $5.00 a day, from June 22nd until the time of bringing their suit, amounting to $500.00. They also claimed additional damages, the whole of their claim aggregating $4,758.87. Under the instructions of the trial court, the jury found for the plaintiffs the sum of $1,907.38, and the court

rendered judgment therefor. By way of excusing delay, it was proven that Welch and Dull were prevented from completing their contract by the time agreed, by the failure of McDonald Brothers to furnish them with a copy of the plans and specifications, without which they could not dress and mark the stones for their proper places in the walls of the buildings, as they were bound to do. The court of appeals held that they had shown a lawful excuse and were exonerated from liability to pay damages for the delay, and reversed the judgment.

Applying the law to the state of facts which the jury evidently found to exist, it results in an affirmance of the judgment.

*Affirmed.*