## CHARLESTON.

MITCHELL & McNEELEY v. DAVIS *et al.*

Submitted December 9, 1913. Decided December 16, 1913.

DAMAGES—*Breach of Contract—Liquidated Damages—Right to Recover.*
Liquidated damages stipulated for in a logging contract, for failure to deliver on skids at the sawmill, eight thousand feet of logs per day during the continuance of the contract, can not be charged against the contractor where the failure to deliver such quantity is caused by the default of both contracting parties.

Error to Circuit Court, Lincoln County.

Action by Mitchell & McNeeley against H. A. Davis and others. Judgment for plaintiffs, and defendants bring error.

*Affirmed.*

*D. E. Wilkinson* and *Williams, Scott & Lovett,* for plaintiffs in error.

*Leftwich, Byrnside & Shaffer,* for defendants in error.

WILLIAMS, JUDGE:

A. B. Mitchell and Joseph McNeeley recovered a judgment in assumpsit against H. A. Davis, W. H. Muth and L. S. Davis, partners doing business in the name of the Gem Lumber Company, for the sum of $641.60, and defendants were awarded this writ of error. The suit was brought to recover an alleged balance due on a logging contract. Defendants were operating a sawmill and had built a tram-road to some timber which they had purchased, and plaintiffs contracted to cut and haul the timber and place it on skids at the sawmill, at the price of $5.00 per thousand feet, scale measure, they to have the use of the tram-road. The case is similar in many respects to the one of Mitchell & Adkins against these same defendants, decided at the present term of this court. They both

grow out of the same contract. This action is for a balance claimed for logs hauled from the beginning of the contract up to the 1st December, 1910, when, with common consent, Adkins took McNeeley's place in the contract, while the other action was to recover for logs hauled in the three months following the 1st of December. It does not appear in this case, as it did in the other, that the same person was employed to truck logs to the sawmill for plaintiffs, and the sawed lumber away from it, over the same tram-road, for defendants. Otherwise, the facts in the two cases are similar.

The matters in controversy arise out of the following provisions in the contract: "Party of second part are to put 8000 feet on skids at mill per day and party of first part to saw 8000 feet per day, and should either party fail to do so, they shall forfeit seventy five cents per 1000 feet for each day to party damaged. Said forfeit not to apply, in case of providential interference or rather hinderance beyond the control of either party." * * * * * "It is agreed that party of first part are to retain 20% of amount of each month's work for first three months as a guarantee that the longest haul will be done and when it is done then said 20% becomes due and payable, otherwise it will be retained by parties of first part to help pay additional cost of hiring said longest haul and when done, should any remain it will be due and payable to party of second part."

Defendants claim damages on two grounds: (1) Liquidated damages for plaintiffs' failure to deliver on the skids at the sawmill 8000 feet of logs per day, and (2) unliquidated damages for their abandoning the contract before the longest haul was completed. It is admitted that not more than 495,657 feet of logs were delivered up to December 1, 1910, the time covered by this suit. This was 963,315 feet short of a daily average of 8000 feet, which, at seventy five cents per thousand, amounts to $722.48. It is also admitted that the forfeiture of seventy-five cents per thousand was intended as liquidated damages, and not as a penalty. Defendants sought to set-off or recoup this sum against plaintiffs' demand, and the jury found against them. There is evidence tending to prove that the failure to deliver 8000 feet daily was owing, in part at least, to the default of defendants; and, in view of

the verdict, it being for the full amount claimed by plaintiffs, the jury must have concluded that defendants were partly to blame for plaintiffs' breach of this provision in the contract. The evidence is very conflicting on this point.   The forfeiture provision is mutual, and plaintiffs were not obliged to put 8000 feet of logs at the mill if defendants did not saw that quantity daily.   There is testimony tending to prove that, for many days when logs were on the skids, the mill was not sawing; that defendants sometimes closed down the mill, when they had logs to saw, and put the hands to work on the tram-road.   Two or three witnesses testify that, in the month of October, the mill was closed down for as much as two weeks when there were logs on the skid-way, and that during that time the teams of one of plaintiffs' employes were idle.   In view of this testimony, the jury no doubt concluded that both parties were at fault.   Liquidated damages, being an entirety, can not be apportioned between the parties when both parties are in default.   There is no way, of ascertaining to what extent the default of one affected the default of the other. When both parties are to blame for non-compliance with the terms of a contract there can be no apportionment of the liquidated damages therein stipulated for.   19 A. & E. E. L. (2nd ed.) 423; *Todd* v. *Churton,* 1 Q. B. Div. (1897) 562; *Willis* v. *Webster,* 1 Hun. (N. Y.) 301; *Welch* v. *McDonald,* 85 Va. 500; *Champlain Construction Co.* v. *O'Brien,* 117 Fed. Rep. 271.   In the last case above cited, the federal court held as follows:   "Liquidated damages stipulated for in a contract for railroad construction for each day's delay in the completion of the work after the time fixed can not be deducted against the contractor where the delay was caused by the default of both parties, and it is impossible to apportion the damages between them."   See also 1 Sutherland on Damages, (3rd ed.), Sec. 299.

The jury also rejected defendants' set-off, or recoupment of $244.61, which they claimed as damages for plaintiffs' failure to complete the job.   This item was claimed under the second clause above quoted from the contract, authorizing the retention of 20% to secure the long haul.   The job was abandoned before all the timber was hauled, and defendants claim that it cost them $244.61 more to have the logging com-

pleted than the price they had agreed to pay plaintiffs. The above sum is ascertained by estimating 20% of the amount due each month, at $5.00 per thousand, on the amount of timber hauled. Defendants do not say exactly how much more the work cost them than they would have had to pay plaintiffs, but one of them does say that it cost them the above sum. It is not clear whether the witness meant that that amount was the entire cost of completing the job, or was only the extra cost above $5.00 per thousand feet. If he meant the former, it proves no damages. Adkins had taken the place of McNeeley in the contract, with the consent of defendants, and Mitchell and Adkins abandoned the job before it was completed. It is, therefore, questionable whether these plaintiffs, Mitchell & McNeeley, could be held responsible for the default of Mitchell & Adkins. But we are not called upon to decide this question in view of the admission of evidence to prove it, as if plaintiffs were liable, and the finding of the jury against defendants' claim. There is evidence tending to prove that it cost defendants less than $5.00 per thousand feet to complete the job, and the jury evidently so believed. John Stowers testifies that he helped finish the job, and was paid $3.50 per thousand feet. He evidently means that that was the price paid him for logging the timber to the tram-road, for he was immediately asked what it was worth to truck it to the mill, and replied that it was worth one dollar a thousand. This evidence tends to prove that it cost defendants fifty cents less per thousand to finish the job than they had agreed to pay Mitchell & McNeeley. If they succeeded in getting the job completed at less per thousand feet, or even at the same price they had agreed to pay plaintiffs, they sustained no damages on that score.

There is no dispute as to the quantity of timber hauled by plaintiffs, or as to the correctness of the amount for which they sue. The only controverted questions relate to defendants' right of recoupment or sets-off, and their right thereto resting on controverted facts, the existence of which depend solely upon conflicting oral testimony, the court is not authorized to disturb the verdict.

The judgment is affirmed.

*Affirmed.*