## Richmond.

### W. C. Jones v. Nelson County.

November 15, 1923.

1. Working Contracts—*Streets and Highways—Annulment of Contract and Completion of the Work—Notice to the Contractor—Conditions Precedent.*—A contract for the construction of a road provided that if the State Highway Commissioner was dissatisfied with the work of the contractor the county might take over and complete the work at the cost of the contractor upon notice to the contractor and upon the contractor failing in three days after the notice to take measures to insure the satisfactory progress of the work. The contract further provided that if the work had to be taken over and completed at the cost of the contractor, the same had to be done either by subletting the residue of the work, or if the county undertook to do it, it should use all tools and materials in use by the contractor.

   *Held:* That these provisions as to notice and the manner of the completion of the contract were conditions precedent to the county taking over the work and completing it at the cost of the contractor, and that by failing to comply with these conditions and peremptorily discharging the contractor, the county voluntarily divided what otherwise would have been an entire and indivisible contract, and the contractor was entitled to compensation for the work performed by him up to the time of his discharge.

2. Working Contracts—*Right to Take Over and Complete Unfinished Work—Conditions Precedent.*—In exercising the right to take over and complete unfinished work at the expense of the contractor, the owner must comply with the conditions precedent provided for in the contract.

3. Working Contracts—*Annulment of Contract—Waiver of Compliance with Conditions Precedent—Case at Bar.*—A contract for road construction provided for three days' notice from the State Highway Commissioner before the annulment of the contract for defective work. In a reply to a letter from the State Highway Commissioner complaining as to the character and condition of the work, the contractor stoutly contested the charges and complaints made against his work and concluded with a suggestion that the county should complete the work, evidently expecting in that event to be paid for

the work already done by him, and obviously not having in mind an enforced eviction under the terms of the contract.

*Held:*   That this did not constitute a waiver by the contractor of the provision as to notice.

Error to a judgment of the Circuit Court of Nelson county in a proceeding by a contractor against the county.   Judgment for the county.   Plaintiff assigns error.

*Reversed and remanded.*

The opinion states the case.

*J. T. Coleman, Jr.,* and *A. B. Percy,* for the plaintiff in error.

*S. B. Whitehead* and *John R. Saunders, Attorney-General, J. D. Hank, Jr., Assistant Attorney-General,* and *Leon M. Bazile, Second Assistant Attorney-General,* for the defendant in error.

KELLY, P., delivered the opinion of the court.

The county of Nelson undertook to build for the State of Virginia two and sixty-nine hundredths miles of macadam road.   This undertaking on the part of the county was evidenced by a resolution of the board of supervisors, passed July 9, 1919, and by contract in writing dated July 15, 1919, between the latter and George P. Coleman, State Highway Commissioner. The total estimated amount to be received by Nelson county for this work was $34,936.00.

Thereafter, on August 30, 1919, the county sublet the contract for the construction of the road to W. C. Jones at an estimated cost of $33,400.30 upon the terms, plans and specifications provided for in the con-

tract between the county and the State.    There was
some little uncertainty and confusion in the evidence
as to whether any formal contract was executed be-
tween the county and the subcontractor, but it is clear,
not only from the resolution adopted by the board of
supervisors on August 30, 1919, but also by the whole
subsequent course of dealings between the parties, that
the subcontractor simply stepped into the shoes of the
county, and that both parties considered themselves
bound by the same terms as those which were em-
braced in the contract· between the county and the
State Highway Commission.

Jones proceeded with the work until September 21,
1920, when he quit pursuant to directions received by
him from the State Highway Department, ratified and
approved by Nelson county.    The work on the road
had not been completed at that time, but was taken
up and finished by the county of Nelson.

[1-3] This litigation had its origin in an account
which Jones rendered against the county, claiming the
sum of $23,668.48 for work done and material furnished
by him up to the time of his discharge.    The account
was presented by him to the board, which declined to
pay. the same, or any part thereof, and he appealed to
the circuit court, where a jury brought from Albemarle
county returned a verdict in favor of the defendant.
The court entered up a judgment on this verdict, and
Jones then obtained this writ of error.

In the trial of the case in the circuit court the de-
fendant was called upon for its grounds of defense, and
filed a statement, the material part of which was as
follows:

"The defendant expects to show that the said Jones
went to work under said contract, and he did a part of
said work; that he did not do the work in the manner

provided for in said contract under which he was working; that he was called upon to so do the work and refused to do it, and that thereupon in accordance with the terms of said contract the said department stopped him from doing any more work on said road, and had it completed at the costs of the said W. C. Jones in accordance with said contract.

"That upon the completion of said road there was left in the hands of the Highway Department, belonging to the said Jones, the sum of $670.65 which has been paid to said county of Nelson by the said State Highway Department, and which is now by the said county of Nelson, Va., paid into court for the said W. C. Jones, and which is in full of all amounts due the said Jones, in this cause, and which would have been paid before, but could not be paid until the completion of the work, which has taken place long since the bringing of this action."

It will be observed that the gist of the defense relied upon was that Jones had failed to do the work in the manner required by the contract; that he was for that reason discharged, and that the road was then completed at the cost of Jones, leaving a balance due him of only $670.55 which had been paid into court.

The evidence makes it clear that the claim filed by Jones for over $23,000.00 was greatly exaggerated and that in no view of the case could the jury have properly found a verdict in his favor for anything like that amount; but there was evidence tending to prove that if, on September 21, 1920, the county had taken over the work from Jones and made a final settlement with him as of that date without regard to what it would cost to complete the job, he would have been entitled to a substantial sum, ranging from a minimum of about $4,000.00 to a maximum of about $6,000.00. The de-

cisive question on this appeal is whether the county had the right to complete the work and charge Jones with the cost thereof in excess of what he could himself have charged the county for its construction. The rights of the parties in this respect are to be determined by the terms of the express contract between the Highway Commissioner and the county of Nelson, subsequently assigned to and assumed by Jones. That contract contained the following provision:

"Annulment of Contract: If at any time the State Highway Commissioner shall be of the opinion that the said work, or the replacing of any defective work or material when ordered is unnecessarily delayed and will not be finished within the time prescribed, he shall notify the contractor and his surety in writing to that effect. If the contractor should not, within three (3) days thereafter, take such measures as will, in the judgment of the State Highway Commissioner, insure the satisfactory progress of the work, the party of the first part may then notify the said contractor to dis-continue all work under this contract and declare said contract forfeited, and relet the said work in whole or in part so far as not completed, or it may instead use all tools, materials, plant, appliances, houses, machinery, and other appurtenances used *th the* contractor on the date on which the three (3) days' notice was given, and it may employ such additional force of labor and teams and purchase such additional materials and tools for the work as in the opinion of the State Highway Commissioner are required, and shall use and pay for said forces and materials, and the said party of the first part may withhold, from payment due or that may become due to the contractor, such sum or sums as it may judge necessary to secure payments for said forces and materials. All costs and charges incurred by the

Commissioner, together with the cost of completing the work under contract, shall be deducted from any moneys due or which may become due said contractor. In case the expense so incurred by the Commissioner shall be less than the sum which would have been payable under the contract, if it had been completed by said contractor, then the said contractor shall be entitled to receive the difference, and in case such expense shall exceed the sum which would have been payable under the contract, then the contractor and the surety shall be liable and shall pay to the State the amount of said excess."

It is to be observed that the right of the county to take over and complete the work at the cost of the contractor depended upon the giving of three days' notice, and upon the contractor's failure, after such notice, to take such measures as would in the judgment of the Highway Commissioner insure satisfactory progress of the work; and, moreover, that if the work was taken over and completed at the risk and cost of the contractor, the same had to be done either by subletting the residue of the work, or if the county undertook to do it, it was to use all tools, materials and appliances in use by the contractor on the date of the giving of such notice, together with such additional force and material as might be necessary for that purpose. There is no evidence, nor is there any contention, that these conditions were complied with.

Early in September, 1920, Mr. S. L. Von Gemmingen, State Highway Commissioner, went over the road in question, and on September 10, 1920, wrote a long letter to Jones making many complaints as to the character and condition of the work, and concluding with these words: "While on the work it was called to my attention that you had refused to carry out in-

structions of project engineer at various times. We have instructed Mr. Morton, and you are hereby notified, that should you at any time fail to carry out instructions of Mr. Morton that he is instructed to order you to discontinue all work and that any work that may be done by you from that time until you are authorized to start work again will not be paid for. Also should you fail to carry out instructions we will be compelled to require the board of supervisors of Nelson county to remove you from this work."

On September 16, 1920, Jones replied respectfully and at great length to the above letter, undertaking to state "the actual conditions," and defending himself against the complaints as to his work. His letter concluded as follows: "You owe me approximately $4,000.00. Mr. Magruder stated that these items would be paid on my April, 1920, estimate, and I have never received any money. Now it would seem that there should be some way in which your department and I could co-operate to get this contract completed in a business-like manner; but if there is not, now that you are acquainted with a few of the facts, I should think it mutually advantageous for you to act as you suggest, and advise the board of supervisors of Nelson county to complete its contract with you.

"Will you be kind enough to give me a few days' notice of your decision, that I may find employment for my outfit?"

On September 21, 1920, C. L. Scott, Jr., district engineer for the Highway Department, wrote the chairman of the board of supervisors as follows:

"This is to notify you that the construction work being done by Mr. C. W. Jones, under contract with your board for the construction of the road leading from Ryan's Mill to Collene, known as Project 33,

State Highway, will not be accepted by the State Highway Commission, and that owing to Mr. C. W. Jones' failure to comply with the contract and specifications and instructions, that the State Highway Commission will not be responsible for the payment for any work performed or any work that may be done by Mr. C. W. Jones after this date, September 21, 1920.

"Mr. C. W. Jones has been advised this date that no work will be accepted nor paid for on the part of the State Highway Commission after the 21st day of September, 1920."

On the same date, September 21, 1920, Scott also wrote a letter to Jones as follows:

"This is to advise you that the State Highway Commission have notified the chairman of the board of supervisors of Nelson county that, owing to your repeated failure to carry out the instructions given and specifications for the construction of Project 33, that the State Highway Commission will not be responsible for any work that may be performed after this the 21st day of September, 1920, and that all work be discontinued and such methods as may be found advisable be adopted for the completion of this contract."

On September 27, 1920, the board of supervisors adopted the following resolution:

"In re the contract of this board with W. C. Jones, and the contract of this board with the State Highway Commission, for the construction of the Ryans Mill-Coleen road—this board does hereby acknowledge receipt of the notice of the State Highway Commission, together with a copy of a letter directed to the said W. C. Jones, dated the 21st day of September, 1920, in which the State Highway Commission state that the Commission will not be responsible for any payment for work done under the above contract after Septem-

ber 21, 1920, and the refusal of the State Highway Commission to except or pay for any further work done on the said road by the said W. C. Jones.

"Now, therefore, be it resolved that this board does hereby order and direct that W. C. Jones, discontinue all work on the said road under the said contract, and that the said contract between this board and the said W. C. Jones is hereby declared forfeited.

"Be it further resolved that a copy of this resolution be served on the said W. C. Jones, and a copy of said resolution be sent to the State Highway Commission."

Neither the letter from Scott to the board of supervisors, nor his letter to Jones, nor the order of the board of supervisors, referred to or attempted to comply with the provisions of the contract as to annulment. He was not given the three days notice with opportunity to take steps necessary to satisfy the requirements of the Highway Commissioner. On the contrary, he was peremptorily discharged by written order without any express or necessarily implied reference to the terms of the contract. Furthermore, as showing that the county did not undertake to comply with the annulment clause above set out, the road was completed by it without availing itself of such outfit as the subcontractor had on hand, and arranged with the Highway Commissioner for the use of convict labor, which had not been used or contemplated under the terms of the contract.

Upon this point the brief of counsel for the defendant has this to say: "It is not contended for the county that the conditions of the contract were exactly complied with, both because under the circumstances it was not possible to do so and because the plaintiff, W. C. Jones, had waived the strict compliance with such conditions. See letter of W. C. Jones to S. L. VonGemmingen, engineer of State highways." We are unable

to accept this as a sufficient answer to the proposition that the county did not comply with the contract in discharging Jones. We are given no reason, and we perceive none, why the contract could not have been complied with; nor, as already indicated, can we say that Jones waived compliance in his letter to VonGemmingen. In that letter, far from admitting any fault on his part, Jones stoutly contested the charges and complaints made against his work, and concluded the communication by what appears to be a perfectly evident attempt to compose the situation with the suggestion that the county should complete the work. He evidently expected in that event to be paid the $4,000.00 mentioned in his letter, and it is equally clear that he did not have in mind an enforced eviction of himself under the terms of the contract. The general trend of the letter, the claim for the balance of $4,000.00, and the specific suggestion that he would want time to remove his outfit, are all inconsistent with the idea of such a forfeiture as was contemplated under the annulment clause.

There is much evidence in the record to show that Jones had done some of the work very imperfectly and contrary to instructions which under the contract it was his duty to obey, but there was also evidence to the contrary upon which the jury might have found that in completing the job the county availed itself of work done and material furnished by Jones worth from $4,000.00 to $6,000.00, which it would have had to pay if a final settlement had been made without regard to the cost of completing the undertaking.

If the county desired to complete the work at the risk of Jones, its right to do so was governed by the definite provisions in the written contract. Having ignored the contract in this respect and peremptorily discharged

Jones, it voluntarily divided what otherwise would have been an entire and indivisible contract, and placed a period thereto as of September 21, 1920. Jones may have been violating the terms of the contract in the manner of his work, and the county may for that reason have been in a position which would have entitled it to give the three days notice provided for, and, if Jones continued in default, then to discharge him and take over the work; but Jones had done nothing up to September 21, 1920, to waive his right to a compliance with the conditions precedent in the annulment clause, and his discharge was, therefore, unwarranted. It is well settled that in exercising the right to take over and complete unfinished work at the expense of the contractor, the owner must comply with the conditions precedent provided for in the contract. 30 Am. & Eng. Ency. L. (2d ed.) 1264; 9 C. J. 813; *Champlain Construction Co.* v. *O'Brien* (C. C.), 104 Fed. 930; *Spencer* v. *Duplan Silk Co.* (C. C.), 112 Fed. 638.

There is nothing in the record to indicate that Jones was entitled to damages for loss of the part of the contract which was still unfinished and from the completion of which he was discharged, and he makes no claim on that account. He had been paid $26,421.71 on account of work already done and accepted by the county, and according to a view of the evidence which the jury might have accepted, was entitled to at least $4,000.00 more as of the date of his discharge for labor and material furnished by him and not included in the payments theretofore made to him. Of course, the county would have the right to effect against this alleged balance such sum, if any, as it might by proper evidence satisfy the jury had been expended in remedying defects in work theretofore done by Jones so as to bring it up to the specifications of the contract. That question is still open.

The case, as already indicated, was tried on the theory that the defendant had the right to complete the contract at the cost of the plaintiff. This was done over the plaintiff's protest, and constituted reversible error. One of the bills of exception certifies that the evidence in support of this theory was objected to when it was presented, the court reserving its decision, and that at the conclusion of all the evidence "the plaintiff moved the court to strike out all of the evidence introduced by the defendant, showing the costs of the completion of the road contracted to be built by the plaintiff, and to exclude all of the evidence introduced by the defendant in an effort to charge the plaintiff with the cost, over and above the contract price, of completing the said road, and to instruct the jury not to consider the same." But this motion was overruled and plaintiff excepted.

The same error in less conspicuous form appears to have influenced the trial court in granting and refusing instructions. We deem it unnecessary to discuss the instructions in detail because the judgment must be reversed for the fundamental error already pointed out, and on another trial the issue will be narrow and simple, and there will be no difficulty in formulating the requisite instructions.

The judgment will be reversed and the cause remanded for a new trial upon this single question: Was the defendant indebted to the plaintiff on September 21, 1920, in any sum, and if so, in what sum, for work done and material furnished up to that date? This question must be answered by the jury without regard to expenditures thereafter made by the county, except such expenditures, if any, as were necessary to bring the work already done and charged for by Jones up to the requirements of the contract.

The cause is remanded for a new trial under the fore-

going restrictions, pursuant to section 6365 of the Code of 1919, which provides that "a civil case shall not be remanded for a trial *de novo*, except where the ends of justice require it, but the appellate court shall, in the order remanding the case, if it be remanded, designate upon what questions or points the new trial is to be had."

*Reversed and remanded.*