# 𝔖taunton

## FIDELITY AND CASUALTY COMPANY OF NEW YORK V. COPENHAVER CONTRACTING COMPANY, INC., ET ALS.

September 22, 1932.

Present, Campbell, C. J., and Holt, Epes, Gregory and Browning, JJ.

The opinion states the case.

*Alexander H. Sands* and *C. C. Lee,* for the appellant.

*J. F. Hall, J. B. Allman, B. A. Davis, Jr.,* and *James H. Price,* for the appellees.

GREGORY, J., delivered the opinion of the court.

The appellant, which was the complainant in the court below, is complaining of a decree wherein it was adjudged, among other things, that it deposit to the credit of the court, in the State-Planters Bank and Trust Company of Richmond, the sum of $62,700.00, together with six per cent interest thereon from October 3, 1928. The principal sum was the full penalty of a certain road contractor's bond, which was executed by the appellant as surety, for the Copenhaver Contracting Company, Incorporated, under a

highway construction contract, entered into between the Highway Commission of Virginia and the Construction Company.

The Copenhaver Contracting Company, Incorporated, a North Carolina corporation, secured two contracts from the Highway Commission to construct, during 1928, two road projects in Franklin county, designated as Projects F520-B4C and F520A. The first of these projects was let under a contract of April 30, 1928, and the second under a contract of May 18, 1928. Under the first contract the Copenhaver Contracting Company agreed to grade and construct a part of the road, for a distance of seven miles, under the terms and conditions clearly set forth in the first contract. In order to secure the fulfillment of the first contract, which was in the usual form adopted by the Highway Commission, under authority of statute, the appellant executed its bond bearing date on May 28, 1928, in the penal sum of $62,700.00.

Under the second contract, embracing the second project, in which the Copenhaver Contracting Company undertook to construct another section of the same road, the Columbia Casualty Company executed its bond to secure the fulfillment of the second contract.

Within a very short time after the appellant had executed the bond mentioned under the first contract, which was the principal contract, the Copenhaver Contracting Company, by written contract, sub-let to the Crowell Contracting Company, Incorporated, another North Carolina corporation, a substantial portion of the work.

Before the completion of either project undertaken in either contract, the Highway Commission, in conformity with the privilege therein contained, declared both contracts forfeited by the Copenhaver Contracting Company and due notice was given the appellant surety company and the Columbia Casualty Company to elect between taking over the work and completing the same, or relinquishing the same in favor of the Highway Commission, to be com-

pleted by said Commission at the risk of the two surety companies. The Columbia Casualty Company, elected to complete the contract embracing the project for which it was responsible and in accordance with said election, did complete its contract and now has due it by the Highway Commission a balance of $6,851.13.

The appellant, which was the surety under the first contract, did not elect to complete the project embraced therein. This project was taken over by the Highway Commission and completed, and there is due the said Commission for this work approximately $18,000.00, which represents the additional cost and expense incurred, by reason of the default of the Copenhaver Contracting Company.

After the work under the main contract was taken over by the Highway Commission, numerous creditors who had furnished labor, supplies and certain equipment to both the general contractor, and the subcontractor, instituted actions against them and the appellant surety, in the Circuit Court of Franklin county, and later the Crowell Contracting Company, the subcontractor, instituted an attachment proceeding in the Circuit Court of the city of Richmond against the Copenhaver Contracting Company and the appellant as principal defendants. In the meantime several of the Franklin county actions had been removed to the District Court of the United States for the Western District of Virginia. Later, the appellant surety, instituted the present suit, in the Circuit Court of the city of Richmond, in which the various plaintiffs in the pending actions were made defendants. The State of Virginia was also made a defendant, as well as all of those who asserted claims against either the Copenhaver Contracting Company or the Crowell Contracting Company.

The purpose of this suit was to convene these parties in a single suit, in order that the rights and liabilities of the appellant, who was, in the lower court, the complainant, and others might be ascertained and determined in this

single cause; that the appellant might pay into court such sum as might be established as due by it under its obligation in the surety bond, and that such sum as might be found due by the appellant, be apportioned and applied in accord with the respective rights and priorities of the various creditors, as should be established by the court.

The circuit court entertained jurisdiction of the suit and enjoined the various creditors who had instituted actions, from further proceeding therein. Various answers and petitions were filed and the cause was referred to a commissioner in chancery by decree of December 3, 1929, wherein all matters and issues were submitted to the commissioner and he was directed to report to the court. On November 24, 1930, he returned this report, establishing therein the amounts due to the respective claimants. The aggregate amount found by the commissioner, to be due the various creditors, was $64,462.70. This was in excess of the full penalty of the bond, which was $62,700.00.

The commissioner reported a claim in favor of the Crowell Contracting Company, the subcontractor, of some $15,000.00, but held that the creditors of the subcontractor, whose claims aggregated some $10,000.00, were not protected by the bond and he refused to report in their favor.

The report came on for confirmation and numerous exceptions were filed, among them, exceptions of the creditors of the subcontractor. The court, by decree, sustained the exceptions of certain creditors of the subcontractor and added their claims to the amount which had been established by the commissioner, increasing said amount to $74,413.96. This amount being far in excess of the full penalty of the bond, the appellant was directed by said decree to deposit in bank, to the credit of the court, the full penalty of the bond, or $62,700.00.

The decree further provided that when the appellant made the deposit as directed, it would be discharged of any and all liability upon the bond involved in this suit. The decree makes no adjudication, as to the distribution of the

fund. It has been suggested that all of the creditors of the Crowell Contracting Company are not before the court.

The appellant has made numerous assignments of error to the decree and the Crowell Contracting Company has assigned cross-error. Assignments of error numbers six and seven were abandoned by counsel for the appellant at the bar of this court.

The commissioner allowed the Crowell Contracting Company the sum of $15,725.82. This allowance was confirmed by the court. The appellant takes the position that no amount whatever should have been allowed that company, while on the other hand, the Crowell Contracting Company contends in cross-error, that the correct amount to which it is entitled is $39,190.56. Neither the trial court nor the commissioner agreed with either the appellant or the Crowell Contracting Company, as we have already seen from the allowance of $15,725.82 made to that company.

The amount found due the Crowell Contracting Company, arose by virtue of the terms of the written contract it had with the Copenhaver Contracting Company. The appellant contends that the claim of the Crowell Contracting Company should have been rejected in its entirety, because, as it contends, the sole reason for the forfeiture of the contract by the Highway Commission, is found in the default of the subcontractor, in failing to fulfill its contract, and, if such be true, the loss to the Copenhaver Contracting Company, according to the evidence, exceeded the allowance to the subcontractor. These facts were plead by the appellant and the claim made to these unliquidated damages, in its answer to the petition of the Crowell Contracting Company by way of a set-off. The commissioner rejected the set-off because it was not properly established and upon this point the trial court agreed with the commissioner.

Aside from the question as to whether the appellant has properly plead the set-off, we are of the opinion that there is no merit in the claim. The contract which

existed between the Copenhaver Contracting Company and the Crowell Contracting Company, in many of its provisions, was similar to the contract between the Highway Commission and the Copenhaver Contracting Company. In the subcontractor's contract, it was provided that the Crowell Contracting Company, should perform the work in accordance with the contract of the Copenhaver Contracting Company, with the Highway Commission, as though the contract were with the Highway Commission. In the Highway Commission's contract, in event· that the contractor failed to fulfill the same as required, provision was made whereby the Commission could (1) take over the work and complete the contract at the risk and cost of the contractor, or (2) charge the contractor $10.00 per day as liquidated damages for failure to complete the contract within the specified time. These identical provisions were adopted by the parties in the contract of the Crowell Contracting Company and the Copenhaver Contracting Company could, if the occasion arose, either have charged the $10.00 per day to the Crowell Contracting Company or it could have annulled the contract. The Highway Commission made no charge for liquidated damages against the Copenhaver Contracting Company, and that company made no charge of liquidated damages against the Crowell Contracting Company. The Highway Commission did exercise its alternate right under the contract to declare the contract annulled and it finished the work and completed the contract. The Highway Commission, having elected to annul the contract and complete the work itself, could not have made a charge against the Copenhaver Contracting Company, for the liquidated damages specified, and therefore, that company could not have made such charge against the Crowell Contracting Company. The Copenhaver Contracting Company not being able to make such charge against the Crowell Contracting Company, it follows that the appellant surety certainly could not make such charge.

Parties to a construction contract may make reasonable provision for liquidated damages and such provision will be enforced by the courts. *Welch* v. *McDonald,* 85 Va. 500, 8 S. E. 711; *Crawford* v. *Heatwole,* 110 Va. 358, 66 S. E. 46; Note in 34 L. R. A. (N. S.) 587; 17 C. J. 931; 8 R. C. L. 563; Elliott on Contracts, Vol. 4, p. 986.

The Copenhaver Contracting Company and the Crowell Contracting Company having agreed upon the damages for delay, no higher damages could now be claimed for the same by the appellant surety. These companies also having agreed upon the annulment of the contract under certain conditions and the conditions justifying the annulment having arisen, in the judgment of the Highway Commission, and the contract having been annulled by the Highway Commission, neither it nor the Copenhaver Contracting Company can now assert a claim for the liquidated damages. As the Highway Commission is bound by the annulment provision and is not permitted to assert a claim to liquidated damages, so also is the Copenhaver Contracting Company and its surety so bound.

Counsel for the appellant has failed to point to any evidence and we have found none which would show that the Copenhaver Contracting Company ever, at any time, gave the notice required by the contract, to the Crowell Contracting Company, that it intended to operate under either the annulment or liquidated damage provision of the contract. In fact, our attention has not been called to any evidence, and from our examination of the voluminous record we have found none, which shows that the Crowell Contracting Company ever had any complaint or notice of any kind from the Copenhaver Contracting Company, that satisfactory progress was not being made, or that the contract was not being fulfilled acording to its terms. So far as we are able to find from the record, it appears that not until the Crowell Contracting Company was actually removed from the work, did it know that there was any dissatisfaction on the part of the Highway Commission.

The Copenhaver Contracting Company possessing the power and contractual right either to annul the contract with the Crowell Contracting Company, if it was not being properly performed, or to charge $10.00 per day, as liquidated damages for delays, occupied a superior position. Through its officers and agents and through the reports of the Highway Commission's engineers, it knew, at all times, the progress that was being made by the Crowell Contracting Company. It knew whether the contract was being fulfilled according to its terms. Its failure to give notice to the Crowell Contracting Company of annulment, or to make any claim for liquidated damages, indicates that so far as it was concerned, it had no complaint, either of the manner in which the Crowell Contracting Company was performing the work, or of any delays that company might have been guilty of.

Under such circumstances it is clear that the Crowell Contracting Company is entitled to compensation, under the written contract for the work actually performed, up to the time the Highway Commission took over the work, and for this work the Commissioner has computed the amount thereof and allowed the sum of $15,725.82 which has been approved by the trial court. We do not think there is any merit in the claim for the set-off regardless of whether it was properly plead.

In *Jones* v. *Nelson County,* 137 Va. 612, 120 S. E. 140, 142, a similar road contract carrying a similar annulment provision was before the court. The Highway Commission let a contract to Nelson county for the construction of a part of a road in that county. After the county had secured the contract it sub-let the work to Jones under a similar contract, just as Copenhaver Contracting Company sub-let the contract in this case to the Crowell Contracting Company. Jones was taken off the work by the county, but the annulment provisions of the contract were not complied with by the county. The county completed the work and charged Jones therefor. He brought an action against the

county, for work performed and material furnished, up to the time he was discharged, and the county asserted a set-off, for the cost of completing the contract. There was a verdict and judgment for the county in the lower court, which was reversed upon appeal. This court held that the general contractor, which was Nelson county, was bound by the annulment provision of the contract and not having complied with it, Jones, the subcontractor, was entitled to compensation for his work and materials supplied up to the time that he was removed or discharged from the job. The court said:

"If the county desired to complete the work at the risk of Jones, its right to do so was governed by the definite provisions in the written contract. Having ignored the contract in this respect and peremptorily discharged Jones, it voluntarily divided what otherwise would have been an entire and indivisible contract, and placed a period thereto as of September 21, 1920. Jones may have been violating the terms of the contract in the manner of his work, and the county may for that reason have been in a position which would have entitled it to give the three days' notice provided for, and, if Jones continued in default, then to discharge him and take over the work; but Jones had done nothing up to September 21, 1920, to waive his right to a compliance with the conditions precedent in the annulment clause, and his discharge was, therefore, unwarranted. It is well settled that in exercising the right to take over and complete unfinished work at the expense of the contractor, the owner must comply with the conditions precedent provided for in the contract. 30 *Am. & Eng. Ency. L.* (2d ed.) 1264; 9 C. J. 813; *Champlain Construction Co.* v. *O'Brien* (C. C.), 104 Fed. 930; *Spencer* v. *Duplan Silk Co.* (C. C.), 112 Fed. 638."

■ The Crowell Contracting Company by way of cross-error assigned to the decree, claims that its allowance should have been $39,190.56 instead of $15,725.82, which was found by the Commissioner and approved by the court.

The basis of the cross-error is that the Crowell Contracting Company, had a collateral agreement with the Copenhaver Contracting Company, entered into at the same time the written agreement was entered into, whereby it was agreed that the Crowell Contracting Company, would not be bound by the terms of the written agreement in some of its terms, such as the requirements for completing so much of the work each day, and regarding the compensation, in the event that the Highway Commission should annul the contract. It claimed it was agreed, that if the Highway Company annulled the contract, the Copenhaver Contracting Company would pay it the cost and expense of all labor and material to the time of annulment and ten *per centum* in addition thereto. When it was sought to prove this collateral verbal agreement, the Crowell Contracting Company was met with the objection that the evidence of such verbal agreement was at variance with the written agreement of the parties, and that a cotemporaneous oral agreement concerning the same subject matter, even though it be contingent upon the happening of a future event, is not admissible. The Commissioner rejected such evidence and the court upheld him in that respect. We think the Commissioner and the court were clearly right in sustaining the objection on the grounds assigned.

The written contract between the Copenhaver Contracting Company and the Crowell Contracting Company was complete upon its face; there was no ambiguity to be explained and the testimony sought to be introduced, if it had been admitted, would have varied and contradicted its terms. The rejection of such evidence is in accord with a long line of Virginia authorities. We do not think it necessary to cite them, nor do we feel called upon to re-state the familiar rule. There is no merit in the cross-error assigned.

Under the second contract awarded by the Highway Commission to the Copenhaver Contracting Company, embracing project F-520-A, the Columbia Casualty Company became surety on a bond given by the contractor, similar to

the bond given under the first contract. This second contract was also annulled by the Highway Commission and at the same time, the Columbia Casualty Company was called upon by the said Commission to complete the project, which it did in a manner satisfactory to the said Commission, and the road, so completed, was accepted. After the completion of the road there remained in the hands of the Highway Commission, the sum of $6,851.15, which represented, to a large extent, retained percentage due under the contract.

The Highway Commission having completed project F-520-B 4 C, under the first contract, at a loss of $18,260.99, asserted and proved its claim in this suit against the appellant surety company, and it was allowed by the Commissioner and sustained by the court. Counsel for the appellants contends that the $6,851.13 in the hands of the Highway Commission, as a balance due for the work on the project F-520-A, which was completed by the Columbia Casualty Company, should be applied as a credit on the loss of the Highway Commission on the project under the first contract, which would inure to the benefit of the appellant by reducing the loss of $18,260.99, which has been established against the appellant in this suit, to $11,409.86. The effect of sustaining this contention would be to permit the appellant surety to benefit to that extent, and to cause the Columbia Casualty Company, to sustain an additional loss of that amount, or $6,851.13. The Highway Commission occupies a neutral position and makes no claim to offset this amount in favor of the appellant. The Columbia Casualty Company has filed its petition in this suit, setting out the facts, and claims to be entitled to the said balance. It introduced no evidence in support of its claim. As between the two surety companies, no proof was necessary, for in no event is the appellant entitled to the benefit of said balance.

In a note appended to the case of *State of Ohio* v. *Schlesinger*, 45 A. L. R. 371, it is stated that: "The

general rule with respect to the right of the surety of a building contractor who completes the contract upon default by the contractor, to moneys in the hands of the contractee, earned by the contractor before default, is that upon the completion of the contract the surety is entitled to be subrogated to the rights which the obligee had to, or could assert against, such funds upon the principal contractor's default to the extent necessary to reimburse itself for the outlay made to complete the contract."

The foregoing general rule is supported by the great weight of authority and in the citation above referred to, are to be found collected the cases which support the rule.

But if we disregard the general rule we are unable to understand why the appellant surety company, would be entitled to the said balance. It was not the surety upon the project, or upon the contract from which this balance arises. The Columbia Casualty Company was bound as surety upon this project. The appellant has shown no equity equal to or greater than the equity of the Columbia Casualty Company. The appellant filed no answer to the petition of the Columbia Casualty Company, wherein this company asserted its right to said balance, and it introduced no proof to show that it was entitled to said fund. The Commissioner's finding in favor of the Columbia Casualty Company, approved by the trial court, is right and proper and we find no reason to disturb it.

The decree confirmed, over the exception of the appellant surety, an allowance to several persons against said surety for the rental of certain equipment, such as the rental of a steam shovel, a steam roller and the hire or rental of teams. Another allowance against said surety and confirmed by the decree included the purchase price of several small articles, such as small tools, and tents and mattresses used by the men while in a camp which was essential and maintained by the Copenhaver Contracting Company for the purpose of the work.

The rentals of the equipment and the purchase price of the tools, tents and mattresses were liabilities of the Copenhaver Contracting Company, the general contractor, and contracted for directly by the general contractor. It is contended by the appellants that the rentals of equipment and the purchase price of the articles mentioned, are not contemplated in the contract bond and therefore it, as surety, is not liable therefor, even though they were contracted for by the various claimants directly with the general contractor, or the "principal," as the contractor is referred to in the bond.

The contract between the Highway Commission and the Copenhaver Contracting Company, the general contractor, which must be read and construed in connection with the bond, provided that the general contractor, for which the appellant is surety, would "do all the work and furnish all the materials, equipment, teams and labor necessary to carry out this agreement * * *."

This question has been presented to the courts in many of the States and in the Federal courts. It has been also presented to this court and we must regard it as having been settled in Virginia by the cases of *Fidelity & Deposit Co. of Md.* v. *Bailey-Spencer Hardware Co.*, 145 Va. 133, 133 S. E. 799; *C. S. Luck & Sons, et al* v. *Boatwright,* 157 Va. 490, 162 S. E. 53, 54, decided on January 14, 1932; *Fidelity & Deposit Co. of Md.* v. *Bailey-Pleasants,* 145 Va. 126, 133 S. E. 797j; and *Fidelity & Deposit Co. of Md.* v. *Mason,* 145 Va. 138, 133 S. E. 793.

After careful consideration of these cases, we are of opinion that the appellant surety is liable under the bond for the rentals of the equipment and the purchase price of the articles previously mentioned and which were contracted for by the Copenhaver Contracting Company, the general contractor.

The appellant, as surety in the bond, guaranteed that the Copenhaver Contracting Company, would "do all the work and furnish all the materials, equipment, teams and

labor necessary to carry out this agreement * * *" and it further guaranteed that the said contractor would "promptly pay * * * for labor and material incurred by said principal" (or the contractor). It is shown by the evidence that the equipment rented and the tools, tents and mattresses purchased, were necessary and actually used in and about the construction of the road.

The Commissioner refused to allow, as against the appellant surety company, various claims of creditors of the Crowell Contracting Company, the subcontractor, asserted against the said appellant, taking the position that such creditors were not protected by the contract bond. Exception was taken by these creditors, to the holding of the Commissioner and after a hearing upon the exceptions, the court sustained them, reversed the Commissioner on this point and allowed the claims. These claims aggregated some $10,000.00 and represented labor, material, equipment and supplies furnished by these creditors to the Crowell Contracting Company, in and about the construction of the road. Thus another issue is raised and it is whether the surety, the appellant here, is liable under the bond to the various creditors of the Crowell Contracting Company, the subcontractor, for labor, material and supplies, furnished by said creditors to the said subcontractor and which were used in the construction of the road.

We must regard this question as having been also settled in Virginia in the *C. S. Luck & Sons Case, supra,* where a Maryland bond, similar to the Virginia bond, was considered. In that case where the surety of the general contractor was held liable to a creditor of the subcontractor, Mr. Justice Holt, speaking for the court, said:

"In recent years road building has developed to an unusual degree. Commonly it is done by contractors and in many instances by subcontractors also. From this a mass of litigation has come dealing with the liability of principal contractors for labor and material primarily contracted

for by them and with like claims in the second degree growing out of dealings with subcontractors.

"It is of course possible to frame statutes and contracts under which they work in such manner as to make them liable for all labor performed and all supplies and materials furnished from whatever source and through whatever agency they may come. This is usually done in general terms, though they sometimes descend into particulars and make the contractor expressly liable for the dealings of subcontractors and sometimes declare them to be his agents, but always liability turns upon the statute."

Then the question is stated thus:

"We are to determine, if the plaintiff whose contract was with and who worked for the subcontractor, can enforce his claim against the principal contractor and his surety."

Then follows the discussion of the cases in other States and the Federal courts and especially the Indiana cases, so strongly relied upon in the instant case. The court in the *Luck Case* concludes:

"When we come to examine the bond itself (pertinent provisions will not be recopied), we find no difficulty whatever in reaching the conclusion that there should be a recovery, had the words, 'for which the contractor is liable,' been omitted. For the measure of a contractor's liability we look to general law. Its settled policy, everywhere made manifest, is to protect those who furnish labor, supplies and material used in and about the construction of public works, and of this contractors must take cognizance. Against the shortcomings of subcontractors they and their sureties can be amply protected by proper bonds."

But the appellant argues that there is a difference between the Maryland bond and the bond in Virginia, and that the dominant purpose of the Virginia bond is to protect the State and not those who perform the labor or supply the material for building the road. We are not impressed with this argument. The condition of the Maryland bond

is "and shall well and truly pay all and every person furnishing material or performing labor in and about every sum or sums of money due him, * * * for such labor and materials for which the *contractor is liable.*"

The Virginia bond, as we have seen, carries this condition, "and shall promptly pay * * * for labor and material, *incurred by said principal*" * * *

While there may be some difference in the language used, yet, there is no substantial difference in the intent and purpose of the two bonds and this court having held, in the *Luck Case,* that those dealing with the subcontractor are protected under such a bond, we adhere to that construction. That case is controlling here.

The fact that the bond expressly provides that the surety guarantees that the contractor will pay for the labor and material incurred by the contractor, negatives the idea that its sole dominant purpose is to afford protection to the State alone.

 The court, by its decree, ordered the appellant to deposit in bank the full penalty of the bond, $62,700, together with 6% interest thereon from October 3, 1928. The Commissioner reported that interest on the claim of the State should begin to run from July 2, 1929, which was the time when the work was completed. He reported that interest on all of the other claims should begin to run from October 3, 1928. When the report came on for confirmation, the appellant filed no exception to this part of the report, and in this respect the court confirmed the same. The appellant now claims, for the first time, that it should not be charged with interest from those dates. We think it is too late to raise this question.

The decree should be amended, however, so that appellant will be charged with interest on $18,260.99, the amount of the claim of the State, from July 2, 1929, instead of from October 3, 1928.

The decree directs the appellant to pay the costs of this suit. This court is not justified in disturbing this provision of the decree.

The appellant contends that if the allowance to the Crowell Contracting Company of some $15,000 is not credited by the claims of the creditors of that company, which aggregate some $10,000, the decree will, in effect, result, to the extent of those claims, in a double award against it.

It has been suggested that there are other creditors of the Crowell Contracting Company who have not been impleaded, but aside from this consideration the record shows clearly that the aggregate amount of all of the claims of the various parties, which have been properly allowed, exceeds the amount of the penalty of the bond; therefore the appellant has no interest in the manner of distribution. After it has complied with the terms of the decree by depositing the amount of the penalty of the bond, proper machinery in the lower court will be found whereby the rights of the numerous parties may be fairly and legally adjusted, when the time for the distribution arrives.

The decree will be amended in the particular above indicated, and as amended affirmed.

*Amended and affirmed.*

Epes, J., dissenting in part:

I do not concur with the conclusion reached by the court that those who supplied labor and material to Crowell Contracting Company, Inc. (the subcontractor), can recover from Copenhaver Contracting Company, Inc. (the contractor), and its surety, the Fidelity and Casualty Company, on the bond executed by them to the State of Virginia, which is in issue in this cause.

I am not unmindful of the decision of this court in the case of *C. S. Luck & Sons* v. *Boatwright,* 157 Va. 490, 162 S. E. 53, and though I dissented in that case, would feel

that I was constrained thereby to concur in this case were there not fundamental differences in the facts of the two cases.

· The court in its opinion in this case rests its decision upon its prior decision in the *Luck Case,* without any discussion of the subject; but, assuming that the court was correct and I wrong in the conclusions reached in that case, it seems to me that if the decision of the court on this point in the instant case be correct, it must be because of something else than the decision in the *Luck Case.*

It is not my purpose to enter upon a general discussion of this general subject, but I feel it incumbent upon me to point out as briefly as I can the fundamental differences between the *Luck Case* and the case. at bar. In order to do this it will be necessary to compare the material parts of the Maryland statute and bond which were involved in the *Luck Case* with the material parts of the Virginia statute and bond which are involved in this case.

| Maryland Statute and Bond Construed in *Luck* v. *Boatwright.* (Italics mine.) | Virginia Statute. and Bond Construed in Case at Bar. (Italics mine.) |
|---|---|
| *Statute.* | *Statute.* |
| Art. 91, sec. 30, Md. Code 1924 (Acts 1910, ch. 721). | Acts 1922, p. 677, c. 403, §8, Michie's Code 1930, sec. 1969-h. |
| "* * * The successful bidder shall * * * execute and deliver to said commission a good and sufficient bond to be approved by said commission to the State of Maryland, not less than the amount of the contract price. In no case shall any such | "The contract shall be let to the lowest responsible bidder for the particular work covered by the bid, and the successful bidder shall enter into a bond, payable to the Commonwealth of Virginia, in the sum of at |

bond be approved or accepted *unless the obligators bind themselves therein to the payment of all just debts for labor and materials incurred by the bidder in the construction and improvement of the road contracted for.*"

### Bond.

"The condition of this obligation is such that if the above bounden 'Principal,' as contractor, shall in all respects" comply with his contract and save harmless the State against certain other things "or for any liability for payment of wages due or materials furnished said contractor; and shall well and truly pay *all and every person furnishing materials or performing labor in and about the construction of said roadway, all and every sum or sums of money due him, them or any of them for such labor and materials for which the contractor is liable.*" * * * "then this obligation to be void."

least thirty per centum of the estimated cost of the work, which bond must be approved by the chairman, and *conditioned upon the faithful performance of the work in strict conformity with the plans and specifications for the same.*"

### Bond.

"The condition of this obligation is such that if the above bounden principal shall in all respects" comply with his contract and save harmless the State against certain things, "and shall promptly pay all just claims for damages, for injury to property *and for labor and material, incurred by said Principal in or about the construction or improvement contracted for,* then this obligation to be void."

As I understand the opinion in the case of *C. S. Luck & Sons* v. *Boatwright, supra,* its conclusions are predicated upon the view that the Maryland statute above quoted makes it manifest that it is the settled legislative policy of that State to protect those who furnish labor, supplies and materials used in and about the construction of public works; that of this policy contractors and their bondsmen must take cognizance; that bonds taken by the Highway Commission of Maryland are to be construed in the light of that legislative policy; and that, therefore, though the condition of the bond reads, "for which the contractor is liable," it should be construed as if it read, "for which the contractor or any subcontractor is liable." The opinion seems further to rest its conclusions upon a statement of the Maryland court in the case of *State* v. *National Surety Co.,* 148 Md. 221, 128 Atl. 916, which it interprets to indicate that the Maryland court is of opinion that the Maryland bond is conditioned that the contractor will pay not only his own debts for labor and material, but also those incurred by his subcontractors for such purpose.

There is no provision in the Virginia statute above quoted, or in any other Virginia statute to which my attention has been called, which can be construed to express or indicate any policy on the part of the legislature to require contractors who contract to construct a public work to give bond that they will pay debts contracted even by themselves, much less by their subcontractors, for labor and material used in the construction of the work.

In *Aetna Casualty & Surety Co.* v. *Earle-Lansdell Co.,* 142 Va. 435, 129 S. E. 263, 130 S. E. 235, it was held that although the Virginia statute did not require the State Highway Commission to take a bond conditioned that the contractor would pay all debts incurred by him for labor and material, yet the Commission had the power to require a bond more broadly conditioned than is required by the statute; and that if such a bond is voluntarily given in consideration of the contract, it may be enforced according to

its *terms*. Accordingly it was held that the surety on the contractor's bond was liable to persons to whom the contractor *himself* became indebted for labor and materials. Nowhere, however, is it suggested in the opinion in this case that the contractor and his surety thereby become obligated to pay debts contracted by a subcontractor for labor and materials. The whole theory of the *Earle-Lansdell Case* is that though the bonds taken by the State Highway Commission are not statutory bonds, in so far as they are conditioned more broadly than the statute requires, they are good as common law bonds, and are enforceable according to their *terms*.

My view is that there is no statute in Virginia declaratory or indicative of a public policy to require contractors to give bond for the protection of those who supply labor or material for a public work; and that, in so far as the bonds taken by the State Highway Commission contain a provision with reference to the payment of debts incurred for labor and materials, they are common law bonds, and are to be construed as common law bonds are construed.

Applying the principles applicable to the construction of common law bonds, I think it is not permissible to construe the bond here in question so as to change its language, which reads, "and shall promptly pay * * * for labor and materials, incurred *by said principal* in or about the construction," so as to read, "and shall promptly pay * * * for labor and materials, incurred by said principal, or his subcontractor, sub-subcontractor, etc., in or about the construction," etc. To do so seems to me to be to assume the power to write a new and entirely different bond for the parties thereto.