## CIRCUIT COURT OF FAIRFAX COUNTY

Stromberg Sheet
Metal Works, Inc.

v.

United States
Fidelity & Guaranty Co. et al.

June 13, 2006

Case No. CL-2005-7459

BY JUDGE STANLEY P. KLEIN

This matter is before the court upon the demurrer of Defendants United States Fidelity & Guaranty Co. and Lumbermens Mutual Casualty Co. (hereinafter jointly referred to as USF&G) to the Motion for Judgment of Plaintiff Stromberg Sheet Metal Works, Inc. (Stromberg). Defendants are the sureties on a payment bond provided by Modern Continental South (MCS), the General Contractor on the Griffith Water Treatment Plant Project (the Project), to Fairfax County Water Authority (the Authority), the owner of the Project. In its Motion for Judgment, Stromberg seeks payment from USF&G for work done by Stromberg on the Project. Stromberg was a party to a subcontract with Shapiro & Duncan (Shapiro), a subcontractor to MCS on the Project. USF&G contends that Stromberg may not seek direct recovery against the payment bond provided by MCS .because, as MCS required a subcontractor bond from Shapiro, Stromberg's only available remedy is against the Shapiro bond. For the reasons set out below, Defendants' demurrer is overruled.

## I. *Background*

On March 23, 2000, MCS and USF&G provided a payment bond for $109,424,784.00 to the Authority as part of the contract requirements for construction work on the Project. The bond, which provides that the principal and the surety are *jointly and severally liable,* states in relevant part as follows:

> Whereas, the Principal is required to furnish security with respect to its obligation to promptly and fully pay for all labor, materials, services, supplies, and equipment provided to the Principal *or any subcontractor* in the prosecution of the work to be performed under the Contract, and
>
> Whereas, the Principal desires to furnish this Payment Bond in lieu of a certified check or cash escrow otherwise required to be provided to the Obligee,
>
> Now therefore the conditions of the above obligations are such that, if the Principal and its successors or assigns, or any of them, shall:
>
> Pay or cause to be paid the wages and compensation for labor performed and materials supplied by all persons (hereinafter called "claimants") who have and fulfill contracts to supply labor or materials to the Principal *or to any subcontractor* engaged in the prosecution of the work to be performed pursuant to the Contract, then these obligations shall be null and void; otherwise, they shall remain in full force and effect.

Payment Bond KF6331 & 9B0145, p. 00611-1 (emphasis added).

On or about June 7, 2000, MCS entered into a subcontract with Shapiro regarding plumbing, heating, ventilation, and air conditioning for the Project. Shapiro then entered into a contract with Stromberg for sheet metal and duct work. Stromberg avers that the Project was poorly managed by MCS, thereby increasing Stromberg's costs, that Stromberg conveyed those increased costs to Shapiro in a Request for Equitable Contract Adjustment, and that Shapiro, in turn, submitted those costs to MCS. Stromberg further avers that MCS never responded to these requests for reimbursement and that, as a result, on or about March 22, 2004, Stromberg provided all parties with written notice that a claim was being made upon the MCS bond. Later, a revised claim against the same bond was made on January 4, 2005. Upon USF&G's refusal

to make payment, Stromberg filed its Motion for Judgment alleging breach of the bond and seeking payment of unpaid contract sums totaling $561,399.00. USF&G demurred to Stromberg's Motion for Judgment arguing that Stromberg was not a proper claimant under the MCS bond pursuant to Virginia law because MCS had required a subcontractor payment bond from Shapiro, thereby limiting Stromberg to an action solely against that subcontractor bond.

The Motion for Judgment is silent as to whether a subcontractor's bond was required of Shapiro. However, the contract between MCS and Shapiro was made part of the Motion for Judgment by virtue of an order of this court entered March 3, 2006, granting USF&G's Motion Craving Oyer. Although the contract is not yet in the court's file, the court will assume that the contract between MCS and Shapiro includes a requirement for a subcontractor bond consistent with USF&G's assertion in their demurrer that such a bond was required.

## II. *Analysis*.

A demurrer tests the sufficiency of factual allegations to determine whether the pleadings state a cause of action. *Fun v. Virginia Military Inst.*, 245 Va. 249, 252, 427 S.E.2d 181, 182 (1993). A demurrer "admits the truth of all material facts that are properly pleaded, facts which are impliedly alleged, and facts which may be fairly and justly inferred from the alleged facts." *Cox Cable Hampton Rds., Inc. v. City of Norfolk*, 242 Va. 394, 397, 410 S.E.2d 652, 653 (1991). In evaluating the sufficiency of the pleadings, the court may consider any accompanying exhibit mentioned in the pleading. *Flippo v. F & L Land Co.*, 241 Va. 15, 16, 400 S.E.2d 156 (1991) (citing Rules of Supreme Ct. of Va. 1:4(i)).

In the instant demurrer, this court is asked to determine whether a party, with a direct contractual relationship with a subcontractor but not a general contractor, may pursue an action upon the general contractor's payment bond if the general contractor has required a subcontractor payment bond. This court must, therefore, consider the relevant provisions of the Virginia Public Procurement Act (VPPA), Va. Code, § 2.2-4300 et seq., dealing with payment bonds for public projects.

Under the VPPA, a prime contractor must provide both a performance and a payment bond for contracts involving public projects that exceed $100,000.00. Va. Code § 2.2-4337. The payment bond "shall be for the protection of claimants who have and fulfill contracts to supply labor or materials to the prime contractor to whom the contract was awarded, *or to any*

*subcontractors*, in furtherance of the work provided for in the contract. . . .". Va. Code § 2.2-4337(A)(2) (emphasis added). "The purpose of Code § 2.2-4337 is to protect those who furnish supplies, materials, and labor for the construction of public improvements, irrespective of whether those items were furnished to the prime contractor or a subcontractor." *American Safety Cas. Ins. Co. v. C. G. Mitchell Constr. Inc.*, 268 Va. 340, 344, 601 S.E.2d 633 (2004). "The section is remedial in character, its language is broad and inclusive, and it was enacted to afford protection to materialmen and subcontractors . . . since mechanic's liens cannot be perfected against public buildings." *Solite Masonry v. Piland Constr.*, 217 Va. 727, 730, 232 S.E.2d 759, 761 (1977) (referencing a predecessor statute to Va. Code § 2.2-4337).

Virginia Code § 2.2-4337 does not require bonds from a subcontractor. Instead, it provides that:

> [n]othing in this section shall preclude the contractor from requiring each subcontractor to furnish a payment bond with surety thereon . . . conditioned upon the payment to all persons who have and fulfill contracts that are directly with the subcontractor for performing labor and furnishing materials in the prosecution of the work provided for in the subcontract.

Va. Code § 2.2-4337(F).

Virginia Code § 2.2-4341 directs how those engaged in fulfilling public contracts may recover upon a payment bond. An eligible claimant, defined as any party "who has performed labor or furnished material in accordance with the contract documents in furtherance of the work provided in any contract for which a payment bond has been given," may bring an action on the payment bond to recover amounts due for labor and material if the claimant "has not been paid in full before the expiration of ninety days after the day on which the claimant performed the last of the labor or furnished the last of the materials for which he claims payment." Va. Code § 2.2-4341(A).

Recovery upon a payment bond is subject to the notice and timing requirements of § 2.2-4341(B), which currently provides in relevant part as follows:

> Any claimant who has a direct contractual relationship with any subcontractor but who has no contractual relationship, express or implied, with the contractor, may bring an action on the

contractor's payment bond only if he has given written notice to the contractor within 180 days from the day on which the claimant performed the last of the labor or furnished the last of the materials for which he claims payment, stating with substantial accuracy the amount claimed and the name of the person for whom the work was performed or to whom the material was furnished. Notice to the contractor shall be served by registered or certified mail, postage prepaid, in an envelope addressed to such contractor at any place where his office is regularly maintained for the transaction of business. Claims for sums withheld as retainages with respect to labor performed or materials furnished, shall not be subject to the time limitations stated in this subsection.

Va. Code § 2.2-4341(B). These bond requirements under the VPPA, contrary to USF&G's interpretation, have remained substantively consistent since 1982.

USF&G contends that the MCS bond executed by the Defendants on March 30, 2000, is governed by a predecessor to Va. Code § 2.2-4341(B) (Predecessor Statute), which read in relevant part as follows:

Any claimant who has a direct contractual relationship with any subcontractor *from whom the contractor has not required a subcontractor payment bond under subsection § 11-58 F* but who has no contractual relationship, express or implied, with the contractor, may bring an action on the contractor's payment bond only if he has given written notice to the contractor within 180 days from the day on which the claimant performed the last of the labor or furnished the last of the materials for which he claims payment, stating with substantial accuracy the amount claimed and the name of the person for whom the work was performed or to whom the material was furnished. *Any claimant who has a direct contractual relationship with a subcontractor from whom the contractor has required a subcontractor payment bond under subsection § 11-58 F but who has no contractual relationship, express or implied, with such contractor, may bring an action on the subcontractor's payment bond.* Notice to the contractor shall be served by registered or certified mail, postage prepaid, in an envelope addressed to such contractor at any place where his office is regularly maintained for the transaction of business.

Claims for sums withheld as retainages with respect to labor performed or materials furnished, shall not be subject to the time limitations stated in this subsection.

Va. Code § 11-60(B) (1982) (emphasis added) (amended and reenacted by Acts of Assembly 2001 as § 2.2-4341(B); subsequently amended by Acts of Assembly 2003 to remove the italicized portions of the above text). USF&G asserts that, pursuant to the Predecessor Statute, whenever a prime contractor required a subcontractor's payment bond from a subcontractor on a project, parties in contractual relationships with that subcontractor were limited to an action upon the subcontractor's bond. However, nothing in the language of the Predecessor Statute requires that a sub-subcontractor make a claim only against a subcontractor bond. The Predecessor Statute simply authorized suit on a subcontractor bond with no time limitation other than the applicable statute of limitations, in addition to the already existing right to bring a claim against the general contractor's bond within the limited time frame set out in the Predecessor Statute. Thus, USF&G's interpretation is inconsistent with the plain language of the Predecessor Statute. Moreover, it stands in stark contrast to the longstanding remedial nature of Virginia's statutory scheme governing payment bonds on public projects.

From the earliest codification of public procurement law in Virginia, the Supreme Court of Virginia has recognized that it was the intent of the General Assembly to afford protection to those engaged in the construction of public facilities for whom a mechanic's lien was not an available remedy. Although early statutory language regarding bonds for public projects was primarily intended to protect the Commonwealth in the event of nonperformance by a contractor (see e.g. Va. Code § 11-20 (1950)), the Supreme Court of Virginia in *Fidelity & Cas. Co. v. Copenhaver Contracting Co.*, 159 Va. 126, 165 S.E. 528 (1932), held that a creditor of a subcontractor on a road project was entitled to a claim upon the general contractor's bond.

For the measure of a contractor's liability we look to general law. Its settled policy, everywhere made manifest, is to protect those who furnish labor, supplies, and material used in and about the construction of public works, and of this contractors must take cognizance. Against the shortcomings of subcontractors, they and their sureties can be amply protected by proper bonds. . . .

The fact that the bond expressly provides that the surety guarantees that the contractor will pay for the labor and material

incurred by the contractor negatives the idea that its sole dominant purpose is to afford protection to the State alone.

*Id.* at 143, 165 S.E. at 534 (citations omitted).

Virginia Code § 11-23, which was first codified in 1954, required a payment bond for contracts to perform public projects in excess of twenty-five hundred dollars. The required bond was to be conditioned upon, among other things:

the payment to all persons performing labor and furnishing materials in the prosecution of such work as is required by the contract. Every such bond . . . shall be construed, regardless of its language, as incorporating, within its provisions, the obligations to faithfully perform the contract and to pay those persons who perform labor and furnish materials on the work.

Va. Code § 11-23. The Supreme Court of Virginia has broadly interpreted the provisions of § 11-23, consistent with the remedial character of the statute.

Materialmen and subcontractors who furnish supplies or work for the principal who has contracted with the public agency . . . for the construction of the public buildings and improvements are unable to perfect mechanic's liens against [public] property for their protection. . . . Section 11-23 is remedial in character, its language broad and inclusive, and obviously it was enacted to afford protection to materialmen and subcontractors. It must be liberally construed in their favor.

*Thomas Somerville Co. v. Broyhill*, 200 Va. 358, 363, 105 S.E.2d 824, 828 (1958).

In 1962, the provisions regarding payment bonds were amended to require that a prime contractor require a payment bond of any subcontractor "conditioned upon the payment to all persons who have, and fulfill, contracts which are directly with the subcontractor for performing labor and furnishing materials in the prosecution of the work provided for in the subcontract." Va. Code § 11-23 (Acts of Assembly 1962). The statute provided a direct right of action for subcontractors against the general contractor's bond as well as a direct right of action against the subcontractor bond for parties "who have, and

fulfill, contracts which are directly with subcontractors for performing labor and furnishing materials in the prosecution of construction work defined herein." Va. Code § 11-23. Additionally, the statute provided that:

> [i]n the event a contractor fails to require from a subcontractor the bond provided for herein, any person who has and fulfills contracts directly with such subcontractor for performing labor and furnishing materials in the prosecution of the work provided for in the subcontract shall have a direct right of action against the obligors and sureties on the bond required here of the contractor.

Va. Code § 11-23.

Notwithstanding the above cited language of § 11-23 requiring a subcontractor payment bond, the Supreme Court of Virginia ruled in *Reliance Ins. Co. v. The Trane Co.*, 212 Va. 394, 184 S.E.2d 817 (1971), that a supplier to a subcontractor could nonetheless proceed with an action upon the bond of the general contractor, consistent with the language of that bond, without first showing that the general contractor had failed to require a subcontractor bond. In *Reliance*, M. L. Whitlow entered into a contract with the City of Alexandria School Board for construction work on a school building. *Id.* at 394, 184 S.E.2d at 818. Reliance Insurance provided a labor and materials bond for the project pursuant to Va. Code § 11-23. *Id.* The bond defined a claimant as "one having a direct contract with the principal *or with a subcontractor of the principal.*" *Id.* at 395, 184 S.E.2d at 818. The language in the MCS bond is virtually identical to the language in the bond in *Reliance*. Trane Company provided materials for the job to Vranich, a subcontractor to Whitlow, and Vranich defaulted on the payments. *Id.* at 394, 184 S.E.2d at 818. Trane sought payment upon the Whitlow/Reliance bond. *Id.* In affirming the trial court's finding in favor of Trane, the Supreme Court of Virginia observed:

> Reliance concedes that plaintiff is covered under the provisions of the bond if it alone is considered. But it argues that the surety on a general contractor's labor and materials payment bond required by the statute is vulnerable to a direct right of action by a materialman only if it is shown that the general contractor did not obtain a payment bond from the subcontractor, and since there was no evidence that Whitlow failed to obtain a bond from Vranich, the plaintiff did not prove its case.

*Id.* In rejecting Reliance's argument, the Court opined as follows:

> We find nothing in the language of the statute which prohibits a bond executed by the prime contractor and his surety from providing broader coverage than that required by the provisions of the statute. Nor is there any provision in the statute requiring proof that a subcontractor's bond was not given before a materialman can recover on the prime contractor's bond. . . . The provisions of the bond afforded coverage to the plaintiff, and Reliance is bound by its tenor.

*Id.* Thus, even though Va. Code § 11-23 required a subcontractor payment bond, the right to recover against the prime contractor's bond remained intact without the necessity of showing whether the prime contractor had required the subcontractor bond. *See also Vulcan Materials Co. v. Betts*, 315 F. Supp. 1049, 1050 (W.D. Va. 1970) (observing that "[i]t is settled in Virginia that the prime contractor and surety on the bond are liable for claims against a subcontractor for labor, material, and supplies furnished.").

In 1982, the public procurement provisions of the Virginia Code were formally re-codified as the Virginia Public Procurement Act (VPPA). As part of this re-codification, Va. Code § 11-58 (the precursor to § 2.2-4337) eliminated the requirement for a subcontractor payment bond and replaced it with language, still in effect today, which states that nothing in the Act prevents a contractor from requiring a subcontractor bond. Additional timing and notice requirements were also added to the bond provisions of the statute, Va. Code § 11-60 (the precursor to § 2.2-4341), which are also still in effect today. Indeed, the statutory scheme under the VPPA has consistently provided protections to materialmen and suppliers working on public projects equivalent to those afforded under Virginia's mechanic's lien statutes, Va. Code § 43-3, et seq., to such materialmen and suppliers on private projects. In 2001, the VPPA was re-codified as part of Title 2.2 of the Code of Virginia.

Nonetheless, USF&G asserts that, even though the plain language of the instant bond provides coverage for Stromberg, when that language is read in conjunction with the Predecessor Statute, it eliminates Stromberg's right to an action against the MCS bond due to the availability of the Shapiro bond. Plaintiff argues that the current version of Va. Code § 2.2-4341(B), which was the version in effect at the time of accrual of the cause of action, must apply. It is not necessary for the court to decide this issue, as Defendants' demurrer is overruled even under the statutory language Defendants seek to apply in the instant matter. The court disagrees for multiple reasons.

First, as explained above, the Supreme Court of Virginia has repeatedly held that the bond provisions of the VPPA are remedial in nature and should be broadly interpreted to afford adequate protection to those working on public projects who are denied the availability of a mechanic's lien. Thus, USF&G's narrow interpretation of Va. Code 2.2-4341(B) is inconsistent with the statutory scheme of the VPPA.

Second, the right of action against the prime contractor's payment bond is actually afforded by Va. Code § 2.2-4341(A) and its predecessors, which delineate proper claimants against a payment bond. Virginia Code § 2.2-4341(B) merely provides timing and notice requirements for parties proceeding against either the prime contractor's payment bond or a subcontractor's payment bond.

Finally, even if Defendants were correct that the language of the USF&G bond is more generous than Virginia law requires, the Supreme Court's holding in *Reliance* makes clear that this presents no conflict with the statutory scheme of the VPPA and that the broader provisions of the bond take precedence over any allegedly more restrictive terms of this sub-section of the statute. Indeed, the remedial nature of the statutory scheme suggests that the protections afforded by the General Assembly are intended to establish a floor, rather than a ceiling, in terms of the remedies available to subcontractors and those working for them on public projects in Virginia. *See, e.g., Commercial Constr. Specialties, Inc. v. ACM Constr. Mgmt. Corp.*, 242 Va. 102, 405 S.E.2d 852 (1991) (holding that payment under a bond could not be denied for failure to meet a ninety-day notice requirement in the bond when the statute mandated 180 days for notice of a bond claim).

Here, Stromberg clearly falls within the criteria for a claimant pursuant to Va. Code § 2.2-4341(A) and its predecessors. Additionally, the plain language of the instant general contractor's bond in the names of MCS and USF&G, standing alone, provides coverage for Stromberg's claim. Thus, Stromberg is entitled to all remedies available to it under the terms of the MCS/USF&G bond posted pursuant to the mandate of Va. Code § 2.2-4337. The statutory scheme authorizing subcontractor's bonds, as well as MCS's contracts with its subcontractors on this project, provide MCS and its sureties, USF&G and Lumbermens, with more than sufficient protection in the event that they are required to make payments to sub-subcontractors as a result of any breach of contract by a subcontractor. Therefore, no reason exists to limit the remedies afforded to sub-subcontractors like Stromberg who are not fully compensated for work done on this project.

### III. *Conclusion*

The clear intent of the General Assembly in crafting the language of Va. Code §§ 2.2-4337 and 2.2-4341 was to provide broad protection to suppliers and contractors providing support to general contractors and subcontractors on public projects. Nothing in Va. Code § 2.2-4341(B) or its predecessors precludes Plaintiff Stromberg Sheet Metal Works, Inc., from prosecuting its claim against the general contractor's bond on this project. Accordingly, Defendants' demurrer is overruled.