# Staunton

## NEW AMSTERDAM CASUALTY COMPANY V. MORETRENCH CORPORATION.

September 5, 1945.

Record No. 2922.

Present, All the Justices.

The opinion states the case.

*Vandeventer & Black* and *W. C. Coupland,* for the plaintiff in error.

*R. Arthur Jett,* for the defendant in error.

BROWNING, J., delivered the opinion of the court.

We have here a bond, sometimes called a performance bond, and a contract consisting of enumerated articles, and component parts, allied by being made parts of each other, and by frequent and apposite reference, and certain stipulations, for interpretation.

They form the agreement of Angelo Lucenti, trading as Meade Construction Company, to construct a sewerage system for the city of Portsmouth, Virginia. The bond, entered into and executed by the Meade Construction Company, Principal, and New Amsterdam Casualty Company, as Surety, bound unto the city of Portsmouth, Virginia, in the penal sum of four hundred and twenty-two thousand seven hundred and seventy dollars ($422,770.00), upon the condition that the said Construction Company had entered into a Contract with the said City, on the 29th day of July, 1942, for the construction of the said sewerage system and if it, the Construction Company, should well and faithfully perform the said work according to the terms of said contract, and should pay all lawful claims of sub-contractors, materialmen and laborers, for all labor performed and materials furnished in the carrying forward, performing or completing of the said contract, they agreeing and assenting that the undertaking should be for the benefit of any material-

men or laborer having a just claim as well as for the city, then the obligation would be void, otherwise remain in full force and effect. It was provided in terms in the bond, that said contract was a part thereof, just as though set forth therein.

The said contract of the 29th day of July, 1942, between the City and Construction Company therein called the Contractor, provided in Article I the scope of the work to be performed saying: " * * * shall provide and furnish all of the labor, materials, necessary tools, expendable equipment, and all utility and transportation services required to perform and complete in a workmanlike manner all the work * * * , in connection with the Sewerage Project of the Owner or in strict accordance with the Plans and specifications, * * * , which Plans and specifications are made a part of this contract, and in strict compliance with the Contractor's proposal and *other contract documents herein mentioned which are a part of this contract;* and the Contractor shall do everything *required by this contract and the other documents constituting a part hereof.*" (Italics added).

Article II entitled: "Compensation To Be Paid To The Contractor," provided for compensation to the contractor for well and faithfully completing the work, in full compliance with the Plans and specifications, and the requirements of the engineers under them.

Article. III entitled: "Component Parts Of This Contract," lists as such component parts:

1. General Conditions
2. Special Conditions
3. Instruction to bidders
4. Advertisements for bids
5. Specifications, including Addenda Numbers—
6. Plans
7. Contractor's Proposal
8. This instrument.

Article IV is entitled: "Guarantee". By it the Contractor guaranteed the work under the contract and agreed that

the Contractor's performance Bond should cover all guarantees in this article.

There was a stipulation between the parties to this litigation, accepting and agreeing to certain facts, without having to prove the same; and agreeing further that the exhibits, from which we have liberally quoted, should be treated as original exhibits and as having been offered and accepted in evidence.

The Fourth clause of this stipulation is as follows: "The said bond, contract and component parts thereof together make up the 'contract documents' a bound copy of which is incorporated in this stipulation as a part hereof and marked Exhibit 'A'."

The Fifth clause stipulated that the Moretrench Corporation had entered into an agreement with the Construction Company, by which it was to lease to the company certain equipment for use in connection with the said project.

The Sixth clause specifically described the equipment as that used to pump underground water from the locations where the sewer pipes were to be installed and under the terms of the agreements, above referred to, this equipment was to be returned to the Moretrench Corporation, unless the construction company exercised its option to purchase it, which it did not do.

The Seventh clause recited that the construction company had failed in the performance of its contract with the City and in its aforesaid agreements with the Moretrench Corporation and had, on May 14, 1943, voluntarily abandoned the work.

The Eighth clause stipulated that, before the default and abandonment, by the construction company, the Moretrench Corporation furnished to it the aforesaid equipment and supplied a demonstrator to superintend the installation thereof, in accordance with the terms of said agreements, and in addition, during the progress of the work, sold to the said construction company certain small parts for use on said equipment. Upon the abandonment of the work certain

of the said equipment was missing from the job site and could not be returned to the lessor, Moretrench Corporation. It was further stipulated that the rental items and the missing equipment items and the expense incurred in furnishing a demonstrator to explain the operation of said equipment amounted in the aggregate to the sum of $8,012.55.

The Ninth clause stipulated that all of the items, totalling the said amount, were necessary to and actually used in and about the construction of said sewerage system and that the sole issue to be determined by the court is whether the defendant, New Amsterdam Casualty Company, as surety, on said performance bond is liable to plaintiff, Moretrench Corporation, for the aggregate amount admitted herein to be due and owing it by Meade Construction Company, or for any portion thereof, and if so, how much.

On the 30th of November, 1943, Moretrench Corporation instituted suit by notice of motion for judgment against the surety, New Amsterdam Casualty Company, for the amount above stated, being the aggregate of its claim for equipment rentals, missing equipment and expense incurred in furnishing a demonstrator to explain the operation of the equipment, all of which was supplied to the contractor by the plaintiff and used in the construction work and not paid for.

The case was heard and decided by the trial court by agreement of parties, without the intervention of a jury. The judgment was in favor of the plaintiff to the extent of its claim for rentals and the value of the missing equipment, but it was for the defendant as to the item claimed for supplying a demonstrator in explanation of the operation of the equipment.

At the outset we may say that the alleged conflict of authority as to the extent of the coverage of bonds of the nature of this one, is more apparent than real. Their precise wording frequently differs enough to afford a very meticulous juristic a peg on which to hang a distinction without a difference. The terms of bonds and contracts of this type

are so variant that one case can rarely be accurately said to be an apt and controlling authority for another.

The petitioner, the surety company, lists three questions which it says are involved in this appeal. They are:

"(1) Do the performance provisions of the bond inure to the benefit of the plaintiff, or is the plaintiff relegated solely to such rights as accrue under the payment provisions therefor?

"(2) Are rentals on equipment leased to the general contractor within the coverage of the bond as constituting materials furnished in the carrying forward, performing or completion of the contract?

"(3) Is the value of missing leased equipment within the coverage of the bond as constituting materials furnished in the carrying forward, performing or completion of the contract?"

The answer to the first question is that all of the provisions of the bond inure to the benefit of the plaintiff. Everything the contractor agreed to do and to pay for, under the terms of the "contract documents," the surety is liable for. The thing is as a chain consisting of a number of links. The contract, the bond, the stipulations, are among them. There are no "omitted links" to break the continuity. The chain in its entirety connects the surety with ultimate liability. To separate the performance provision of the bond from the payment provision, as the petitioner seeks to do, is to break the chain forged by the parties to the transaction. It cannot be done. In the case of *Concrete Products Co.* v. *United States Fidelity, etc., Co.,* 310 Pa. 158, 165 A. 492, the court construed a bond and contract containing security and performance provisions precisely like those here, in a suit brought by materialmen against a surety company, for a balance due for sewer pipes furnished.

Judgment for the plaintiff was sustained.

"Generally, where a bond and another contract or instrument relate to and form one and the same transaction, or the bond refers to such other instrument or is condi-

tioned for the performance of specific agreements set forth therein, such instrument with all its stipulations, limitations or restrictions becomes a part of the bond, and the two should be read together and construed as a whole. Thus, the obligation of a building or construction contractor's bond is to be read in the light of the contract it secures."

This is found in Insurance Law and Practise (Appleman), Vol. 9, pp. 70, 71, Section 5276.

We said in *Bristol Steel, etc., Works* v. *Plank*, 163 Va. 819, 825, 178 S. E. 58, 118 A. L. R. 50: "Thus, where a private contractor's bond for the faithful performance of a building contract refers to the contract and makes it a part of the bond and the contract in turn refers to the specifications and makes them a part of the contract, the bond, the contract, and the specifications are all to be construed together." The above was quoted from the Annotators Notes 77 A. L. R. p. 13.

In the case of *Anderson Lbr. Co.* v. *National Surety Co.*, 49 S. D. 235, 207 N. W. 53, 57, a contract and bond were construed which involved the building of a bridge for the state of South Dakota. An express condition of the bond was that: "The said principal shall well, truly and faithfully comply with and perform all the terms, covenants, and conditions of said contract, on his part to be kept and performed, according to the terms and tenor of said contract."

In relation to this provision the court said:

"We have no hesitation in holding that by this broad provision last above quoted the bond carried into itself every term and condition of the contract between the principal contractor and the state of South Dakota, and the surety thereby bound itself for the performance of every act which the principal undertook in his contract."

The books contain so many cases holding that it is an established principle of law that in determining the Surety's liability to third persons on a bond given for their benefit and to secure the faithful performance of a construction contract as it relates to them, the contract and bond are to

be construed together, that it would be needless and tedious to cite them.

As we have seen, the bond and contract, including all of the Articles and provisions, make up what is called the "Contract Documents", which are incorporated in a bound copy of the same marked Exhibit "A". We here quote some of the pertinent provisions of this document:

"The Contract Documents are complementary and what is called for by any one shall be as binding as if called for by all. The intention of the Contract Documents is to include in the contract price the cost of all labor and materials, water, fuel, tools, plant equipment, light, transportation and all other expenses as may be necessary for the proper execution of the work."

"The contractor shall provide and maintain all modern plant, tools, and equipment necessary to the acceptable performance of the contract * * * ."

"36. *Materials, Services and Facilities.*

(a) It is understood that except as otherwise specifically stated in the Contract Documents, the Contractor shall *provide* and *pay* for all materials, labor, tools, *equipment*, water, light, power, transportation, superintendence, temporary construction of every nature and all other services and facilities of every nature whatsoever necessary to execute, complete and deliver the work within the specified time." (Italics supplied).

A fair and reasonable analysis and construction of the foregoing provisions, and others heretofore quoted, we think, brings one to the inescapable conclusion that the Surety in this case is liable for everything the Contractor agreed to do. Its liability is coextensive with that of the Contractor. *Ideal Brick Co.* v. *Gentry*, 191 N. C. 636, 132 S. E. 800; *Daughtry* v. *Maryland Cas. Co.*, 48 F. (2d) 786. The above cited cases are quite illuminating of the points here stressed, particularly the last one.

We are not without apposite authority from our own court as to other points made. In the case of *Fidelity, etc., Co.* v.

*Copenhaver Contracting Co.*, 159 Va. 126, 165 S. E. 528, a case involving the construction of a bond and construction contract, this court said through Mr. Justice Gregory:

"After careful consideration of these cases, we are of opinion that the appellant surety is liable under the bond for the rentals of the equipment and the purchase price of the articles previously mentioned and which were contracted for by the Copenhaver Contracting Company, the general contractor."

It may be well to say that the appellant surety, in the above case, resisted strenuously the allowance to certain persons for the rental of certain equipment, as the rental of a steam shovel, a steam roller and the hire or rental of teams. This seems conclusive of the question of the liability of the Surety in this case for the item embraced in the rentals charge.

It follows that we think the trial court was plainly right in its judgment except as to the item of $61.73 representing the expense incurred by the Moretrench Corporation in furnishing a demonstrator to explain the operation of the equipment. We think this was a necessary operational incident to the work and constitutes a proper charge which is included in the broad provisions of the "Contract Documents". We affirm the judgment of the trial court as to all the items, forming the basis of the suit, except the one last referred to, as to which we reverse its judgment and enter judgment for the Moretrench Corporation for the sum of $7,800.82, with interest thereon from May 14, 1943, until paid.

*Affirmed in part, reversed in part and final judgment.*