## Richmond

### Thomas Somerville Company v. L. R. Broyhill, Et Al.

December 1, 1958.

Record No. 4841.

Present, Buchanan, Miller, Whittle, Snead and I'Anson, JJ.

The opinion states the case.

*Whitford W. Cheston,* for the plaintiff in error.

*C. Wynne Tolbert* (*Oren R. Lewis; Lewis & Tolbert,* on brief), for the defendants in error.

MILLER, J., delivered the opinion of the court.

■ Thomas Somerville Company, hereinafter referred to as Somerville, instituted action at law against L. R. Broyhill and Glens Falls Insurance Company, surety on Broyhill's bond, hereinafter at times called defendants, to recover on the bond the sum of $2,137.83, with interest from August 24, 1955, as evidenced by an account of five items. At the conclusion of Somerville's evidence, the court sustained defendants' motion to strike, and upon return of verdict for defendants, judgment was entered accordingly.

On October 11, 1954, Broyhill, a general contractor, with Glens Falls Insurance Company as surety upon his bond, contracted with the school board of Fairfax county, Virginia, to make alterations and additions to two school buildings. It is alleged in the motion for judgment that the items of indebtedness represented the purchase price of plumbing material supplied to S. H. Hammer, Inc., a subcontractor under Broyhill, and that it had been actually used in the alteration and additions to the school buildings, but never paid for by the subcontractor. Under the terms of the bond, Somerville claims that he has a right of action against Broyhill and his surety.

Recovery upon three items of asserted indebtedness, totaling $969.47, has now been abandoned by Somerville because it concedes that the evidence fails to prove that the material represented by these items was ever delivered to the school sites or used in the buildings. It now seeks a reversal of the judgment and a new trial as to $1,168.36, composed of two items of $302.71 and $865.65. Defendants insist that the evidence is insufficient to support a recovery for either or both of these items.

The bond executed between Broyhill and Glens Falls Insurance Company on October 11, 1954, and in evidence as an exhibit, recites that Broyhill had entered into a contract with the school board for alterations and additions to Centreville and Mt. Vernon schools. It then states that Broyhill, as principal, and the insurance company, as surety, are held and firmly bound, jointly and severally, to the school board in the sum of $259,700, to be discharged upon enumer-

ated conditions, one of which is that the principal "shall promptly make payment to all persons supplying labor and materials in the prosecution of the work provided for in said contract, then this obligation to be void; otherwise to remain in full force and virtue." This bond was executed by Broyhill in compliance with § 11-23, Code 1950, (Acts 1954, ch. 279, p. 360; 1956 Replacement Volume, Code 1950)[1], which, among other things, contains the following provision:

"Every person who performs labor and furnishes materials on a contract covered by this section shall have a direct right of action against the obligor and sureties on such bond; * * *."

The statute and the bond are to be read together, for together they constituted the measure of Broyhill's undertaking and the extent of his and the surety's liability.

■ We now turn to the evidence pertaining to the two items of indebtedness which is certified in narrative form and may be briefly stated as follows:

Peter J. Ciango, credit manager for Somerville, testified that his company's customary procedure was to have the customer's request for material written up on an order form in triplicate, which included the name of the purchaser, and the specific work project for which the supplies were ordered. A duplicate of the original was sent with the material when delivered, upon which the purchaser or someone for ·him signed his initials or name, and the duplicate was returned to the office. In event no signature was obtainable when the material was delivered, the customer was notified by telephone of delivery to the place designated. Another duplicate copy of the order was sent to Somerville's invoicing department, and an invoice was sent to the customer a few days after delivery of the material. At the end of the month, a regular monthly statement, indicating the status of the account as of that date, was forwarded to the customer.

Voluminous documents, including original orders, delivery tickets and invoices were introduced in evidence. Two lots of these documents carried the notations and indicated that the material called for in the orders, invoices and delivery tickets, which make up the two items of 302.71 and $865.65, had been delivered to Mt. Vernon and Centreville schools respectively. Other lots of original orders, invoices and delivery tickets merely indicated that the goods pur-

---

[1] Acts 1958, ch. 86, p. 66, amended this section.

chased and delivered had been ordered by S. H. Hammer, Inc., but carried no notation of delivery at the school sites, and these are the supplies for which recovery has been abandoned.

The supplies purchased by Hammer from Somerville and listed on the orders, invoices and delivery tickets were piping, pipe fittings, sinks, basins, lavatories, water closets, and other plumbing materials. The articles carried no identification numbers or lettering and are commonly referred to as "run of the mine" plumbing supplies; however, there was an order for one large exhaust fan which was capable of identification.

Edward Dodge, salesman for Somerville, testified that he received orders from S. H. Hammer, Inc., for plumbing materials to be delivered when needed and wrote out approximately ninety-five per cent of the orders in his own handwriting. He identified numerous documents as representing original orders from this purchaser and the day before the trial he visited the two schools to ascertain what materials furnished by Somerville were evident in the buildings and there saw many water closets, sinks, lavatories, basins, etc., that were of similar character and matched the items referred to on the orders, invoices and delivery tickets. He was unable to see the pipe and fittings that had been embedded in the walls but identified the exhaust fan, which carried the same serial number that appeared on one of the orders though someone other than he had written the number on the original order.

In the narrative statement of the evidence a recapitulation of the status of the two items of "account as developed on cross-examination is as follows:

"Delivered direct to Mt. Vernon School job site . . . . . . $302.71

"Delivered direct to Centreville School job site . . . . . . 865.65"

Defendants assert that the burden is upon Somerville to prove that the supplies billed by it to S. H. Hammer, Inc., were used in the alteration and construction of the schools. Somerville agrees that the burden is upon it to prove that vital fact. It, however, insists that the evidence is sufficient to prove that it sold and furnished material to the subcontractor to be used in the buildings and that the plumbing supplies were delivered to the subcontractor at the school sites. It then argues that proof of these facts creates a *prima facie* case or presumption that the material and supplies were used in the buildings.

The question presented is annotated in 39 A.L.R. 2d 394, and the

principle relied upon by Somerville is stated at page 399 in the following language:

"Delivery of the materials to the building site assumes a unique importance, however, in connection with the principle that proof of such delivery constitutes prima facie evidence, or creates a presumption, of a use of the materials in the improvement, particularly where supported by other circumstantial evidence of actual use, and imposes upon the owner the burden of showing that they were not used, if such was the case."

At page 427 of this annotation, under the heading of "Delivery as evidence of use," it is stated:

"With few exceptions, those cases wherein the point has been presented have held that proof of delivery of the materials to the building site constitutes prima facie evidence, or creates a presumption, of their use in the improvement, particularly where supported by other circumstantial evidence of actual use, the owner thereafter having the burden of showing that they were not so used, if such was the case."

Of similar import are 36 Am. Jur., Mechanic's Liens, § 275, p. 168, and 57 C. J. S., Mechanic's Liens, § 308, p. 962.

We hold that the evidence and just inference deducible therefrom are sufficient to prove that the plumbing material represented by the two alleged items of indebtedness were furnished by Somerville to the subcontractor, S. H. Hammer, Inc., and delivered to the school sites; this constitutes *prima facie* proof or a rebuttable presumption that they were used in the construction of the respective buildings.

■ We find no merit in defendants' contention that § 11-23 may not be invoked by Somerville because it was not intended to protect materialmen who sold supplies to the subcontractor, even though the latter used the supplies in the construction of the schools.

Materialmen and subcontractors who furnish supplies or work for the principal who has contracted with the public agency mentioned in that section for the construction of the public buildings and improvements are unable to perfect mechanic's liens against the property for their protection. They cannot avail themselves of the provisions of §§ 43-7 and 43-9, Code 1950, for liens cannot be perfected against the public buildings and other improvements. Section 11-23 is remedial in character, its language broad and inclusive, and obviously it was enacted to afford protection to materialmen and subcontractors. It must be liberally construed in their favor.

In the first paragraph of the section it is stated that the bond is conditioned "upon the payment to all persons performing labor and furnishing materials in the prosecution of such work as is required by the contract." The concluding paragraph is of similar scope for there it is said, "Every person who performs labor and furnishes materials on a contract covered by this section shall have a direct right óf action against the obligor and sureties on such bonds * * *."

It is made manifest by this language that the intent of the statute is to protect those who furnish supplies, material and labor in and about the construction of the public buildings and improvements mentioned in the act, whether they be furnished to the principal contractor or to a subcontractor; of this a general contractor and his surety must take cognizance. They may readily protect themselves against the shortcomings of subcontractors by requiring bonds of the latter. *C. S. Luck & Sons* v. *Boatwright,* 157 Va. 490, 162 S. E. 53.

The conditions and provisions of the bond recognized the scope and intent of the statute and obligated the principal and surety to Somerville who furnished to the subcontractors the supplies that he used in the buildings.

The judgment of the lower court will be reversed and the case remanded for a new trial limited to the two items of $302.71 and $865.65, they constituting the indebtedness now in controversy.

*Reversed and remanded.*