**R. C. STANHOPE, INC., Appellee,**

v.

**ROANOKE CONSTRUCTION COMPANY and Fidelity & Deposit Company of Maryland, Appellants,**

and

**LOCKWOOD BROTHERS, INC., Third-Party Defendant.**

**No. 75–1804.**

United States Court of Appeals, Fourth Circuit.

Argued Feb. 4, 1976.

Decided April 19, 1976.

Robert L. Dolbeare, Richmond, Va. (Obenshain, Hinnant, Dolbeare & Beale, Richmond, Va., on brief), for appellant.

Joseph E. Blackburn, Jr., Richmond, Va. (Wicker & White, Richmond Va., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and CRAVEN and FIELD, Circuit Judges.

CRAVEN, Circuit Judge.

Stanhope sued Roanoke and its surety, Fidelity and Deposit Company of Maryland, in the Virginia state courts seeking recovery on Roanoke's payment bond with the City of Richmond. Roanoke and Fidelity removed the case to federal court, with jurisdiction based upon diversity of citizenship. On the basis of stipulated or undisputed facts, the district court awarded summary judgment in favor of Stanhope in the amount of $28,110.76 plus costs. We affirm.

I.

On February 8, 1973, Roanoke contracted with the City of Richmond to construct a

storm sewer. Roanoke then procured from Fidelity a payment bond as required by Virginia statutes.[1]

On June 1, 1973, Roanoke subcontracted with Lockwood to perform certain jobs in the construction of the sewer. Significantly, Roanoke, as the general contractor, did *not* require that Lockwood post a subcontractor's bond as required by Virginia law.[2] Under the terms of the subcontract, Lockwood was to install steel "sheet pilings" along the length of a 1,100-foot ditch so that Roanoke could install the sewer drainpipe.

Lockwood did not own the steel sheet pilings used in performing the subcontract, but instead rented them from the plaintiff Stanhope. During the construction of the sewer, Lockwood fell behind in its rental payments to Stanhope, and when the project was completed, Lockwood failed to return the rented sheet piling. Lockwood, now bankrupt, has conceded that Stanhope has a valid claim against it both for delinquent rental charges, and for the value of the missing sheet piling, totaling approximately $27,000. It is clear that the sheet piling was removed from the ditch, as contemplated, and that it was not incorporated into the final job.

Stanhope, unable to recover against Lockwood, filed suit against Roanoke and Fidelity pursuant to § 11–23 of the Code of Virginia.[3] This statute requires general construction contractors with any public agency to furnish the agency first, a performance bond solely for the protection of the public agency, and second, a payment bond for the protection of subcontractors and for persons who perform labor and furnish materials to the general contractor. Roanoke furnished the City of Richmond with both the performance and payment bonds, with Fidelity as surety. This same statute, however, requires that the general contractor obtain from any subcontractor payment bonds for the protection of those who perform labor or furnish materials "in the prosecution of the work provided for in the subcontract."[4] Roanoke failed to do so. The statute clearly sets forth the consequences:

In the event a contractor fails to require from a subcontractor the bond provided for herein, any person who has and fulfills contracts directly with such subcon-

---

1. The statute around which this litigation revolves is Section 11–23 of the Code of Virginia, which reads in pertinent part as follows:

    § 11–23 of the Code of Virginia. Bonds on public contracts to which county, city, town, school board, or agency thereof, is party; conditions of such bonds.—No contract, in excess of two thousand five hundred dollars, . . . or other construction work, shall be entered into unless and until the person contracting to construct, improve or repair the work shall have entered into the following bonds with surety thereon . . .:
    (a) A performance bond . . .
    (b) A payment bond conditioned upon the payment of all persons who have, and fulfill, contracts which are directly with the contractor for performing labor or furnishing materials in the prosecuion [sic] of the work provided for in said contract.
    No contractor . . . shall subcontract any work required by the contract except under the following conditions: Each subcontractor shall furnish, and the contractor shall require as a part of the agreement between the subcontractor and the contractor, a payment bond with surety thereon . . . which shall be conditioned upon the payment

to all persons who have, and fulfill, contracts which are directly with the subcontractor for performing labor and furnishing materials in the prosecution of the work provided for in the subcontract. Every such bond shall be construed, regardless of its language, as incorporating, within its provisions, the obligation to pay those persons who furnish labor or materials as aforesaid; . . . Provision for said payment bonds shall be made a part of each agreement between the owner and the contractor. In the event a contractor fails to require from a subcontractor the bond provided for herein, any person who has and fulfills contracts directly with such subcontractor for performing labor and furnishing materials in the prosecution of the work provided for in the subcontract shall have a direct right of action against the obligors and sureties on the payment bond required of the contractor under subparagraph (b) above.

2. Section 11–23, Code of Virginia, *supra* note 1.

3. *Id.*

4. *Id.*

tractor for performing labor and furnishing materials in the prosecution of the work provided for in the subcontract shall have a direct right of action against the obligors and sureties on the payment bond required of the contractor . . .[5]

The only issue on appeal is whether Stanhope can bring itself within the language of the statute, *i. e.,* do rental charges and the value of missing rental equipment constitute "materials furnished" within the meaning of § 11–23 of the Code of Virginia?

## II.

What is meant by "materials furnished" as used in § 11–23? The phrase is not defined in the Code of Virginia, and has never been precisely defined by the Supreme Court of Virginia. Roanoke and Fidelity strongly contend that rental charges for materials used by a subcontractor and the value of unreturned rented equipment is not included in the definition of "materials furnished." This position, however, overlooks two opinions of the Supreme Court of Virginia which support Stanhope's position to the contrary. The district court found these cases persuasive, and we agree.

In *New Amsterdam Casualty Co. v. Moretrench Corp.,* 184 Va. 318, 35 S.E.2d 74 (1945), the Supreme Court of Virginia was required to construe contractual language in a payment bond virtually identical to that which appears in § 11–23. The facts in the *Moretrench* case were likewise quite similar to those presently before us. In *Moretrench,* the court held that rental charges for equipment leased to the general contractor did constitute "materials furnished" within the terms of the bond. The court further held that the value of missing leased equipment was within the coverage of the bond as constituting "materials furnished" in completing the contract. While *Moretrench* involved a bonding contract and the present appeal involves a statute, the bonding requirements are expressed in virtually identical terms. We are uncon-

vinced that the Virginia Supreme Court would construe the same language differently solely because it appears in a statute rather than a contract, especially where the very purpose of the statute is to cover the failure to require a payment bond.

In *Thomas Somerville Co. v. Broyhill,* 200 Va. 358, 105 S.E.2d 824 (1958), again on similar facts, the Virginia Supreme Court held that § 11–23 entitles one who has furnished materials to a subcontractor to recover against the general contractor's required payment bond. The court held:

> Materialmen and subcontractors who furnish supplies or work for the principal who has contracted with the public agency mentioned in that section for the construction of the public buildings and improvements are unable to perfect mechanic's liens against the property for their protection. They cannot avail themselves of the provisions of §§ 43–7 and 43–9, Code 1950, for liens cannot be perfected against the public buildings and other improvements. *Section 11–23 is remedial in character, its language broad and inclusive, and obviously it was enacted to afford protection to materialmen and subcontractors. It must be liberally construed in their favor.*

> .   .   .   .   .

> It is made manifest by this language that the intent of the statute is to protect those who furnish supplies, material and labor in and about the construction of the public buildings and improvements mentioned in the act, whether they be furnished to the principal contractor or to a subcontractor; of this a general contractor and his surety must take cognizance. They may readily protect themselves against the shortcomings of subcontractors by requiring bonds of the latter. [Emphasis added].

We reiterate the admonition of *Somerville:* Roanoke could easily have avoided this litigation simply by requiring a payment bond from its subcontractor. And Roanoke's surety, Fidelity, is warned by the

---

5. *Id.*

statute of potential extension of its liability by reason of Roanoke's failure to do so. The decision of the district court granting summary judgment in favor of Stanhope will be

*AFFIRMED.*

HAYNSWORTH, Chief Judge (concurring and dissenting):

I.

I concur in the court's opinion insofar as it relates to rental payments for the steel sheet pilings.

Stanhope makes much of the fact that in 1968 § 43–2 of Virginia's mechanics' lien laws was amended to include the reasonable rental or use value of equipment. It infers from this amendment that the rental value of such equipment was not within the meaning of materials furnished under earlier mechanics' lien laws and that the General Assembly's failure to amend § 11–23 indicates a legislative intention to provide greater coverage under the general mechanics' lien laws than for those supplying rental equipment on public projects.

The reasoning is too speculative. The 1968 amendment was adopted following a routine review of Virginia's mechanics' lien statutes. There had been no definitive construction of § 43–2 before the amendment, and the amendment simply may have been the result of an abundance of caution and a wish to make it explicitly clear that rental payments for rental equipment supplied were included.

On the other hand, there is nothing to indicate that the General Assembly ever intended to provide greater protection for materialmen and subcontractors on private construction projects than that furnished to such suppliers on public projects. The court's quotation from *Thomas Somerville Co. v. Broyhill* strongly suggests a legislative intention to equate materialmen and subcontractors on public projects with the statutory protections afforded such suppliers on private projects. The statement by the Supreme Court of Virginia that § 11–23 is remedial and must be given a liberal construction convinces me that whatever doubts may arise from the adoption in 1968 of the amendment to § 43–2 should be resolved in favor of a construction of § 11–23 so as to include the rental value of rental equipment furnished within the meaning of "materials."

II.

I cannot agree with the court, however, that the steel sheet piling itself is within the term "materials," as used in § 11–23. It was not expendable equipment. It was a capital item. Clearly it was intended that it be used again and again on job after job. Had it had sufficient need for such sheet piling, Lockwood might have purchased it, but surely if it failed to pay the purchase price of such capital equipment, the general contractor on the project on which it was first used would not be obligated to pay to the seller the full purchase price. If it had been used on more than one project, neither the general contractor on the first, the second or third project would be liable for the purchase price.

Lockwood probably had only occasional need of such equipment, preferring, therefore, to lease it. Its obligation to return leased equipment, like its obligation to pay the purchase price of capital equipment purchased, is not the kind of thing which a payment bond underwrites.

A contractor who leases capital equipment, a dragline, for instance, has a duty to return it to the lessor in accordance with the terms of the lease. So does a conditional vendee of similar equipment have a duty to return it to the conditional vendor if he does not maintain his payments. Either may make an unlawful disposition of the equipment, in which event he subjects himself to possible criminal charges and to personal liability to the lessor or conditional vendor. In neither event, however, could an owner or general contractor upon whose work the dragline had been used be held responsible for the unlawful conduct of the lessee or conditional vendee in failing to return the dragline in accordance with his contractual obligations, unless the one

sought to be charged was a participant in the unlawful disposition, but that has nothing to do with payment bond statutes or mechanics' liens which provide payment protection for labor, for materials incorporated in the work, and for other materials reasonably expended during the course of the work. Though these statutes may protect a remote supplier of capital equipment for rental payments accruing during the course of the work, they do not require either the owner or the general contractor to insure the remote supplier against any unlawful disposition by the subcontractor of the capital equipment.

If a payment bond had been required of Lockwood, it would have furnished Roanoke with protection for accruing rental payments, but not for the ultimate return of the piling, for the return of capital items is simply not within the contemplation of any of these statutes.

I do not read *New Amsterdam Casualty Co. v. Moretrench Corp.*, 184 Va. 318, 35 S.E.2d 74, as requiring a different result. There the court was not concerned with the interpretation of a statute. The contract document had been specifically incorporated in the bond, and the bond was construed as a guarantee of the contractor's performance of everything undertaken under the contract documents. The general contractor had explicitly undertaken to lease the pumping equipment from Moretrench and to return it unless a purchase option was exercised, and that had not occurred.

In *Moretrench* the court noted: " * * * The terms of bonds and contracts of this type are so variant that one case can rarely be accurately said to be an apt and controlling authority for another." Its construction of the expressed provisions in the bond and the contract documents there is not suggestive to me of its answer to the very different question which arises when we are called upon to construe § 11–23 of the Virginia Code.

### III.

For these reasons, I join in the affirmance insofar as Roanoke's claim is founded upon unreceived rental payments. I dissent insofar as that claim is founded upon the value of the unreturned sheet piling.